800 P.2d 1291

**Veda SIREK and Don Sirek, wife and husband, Plaintiffs–Appellants,**

v.

**FAIRFIELD SNOWBOWL, INC., an Arizona corporation, Defendant–Appellee.**

**No. 1 CA–CV 89–172.**

Court of Appeals of Arizona, Division 1, Department D.

Oct. 30, 1990.

184

John L. Dillingham, P.C. by John L. Dillingham, Phoenix, for plaintiffs-appellants.

Lewis and Roca by Susan M. Freeman, Sheila Carmody, Phoenix, for defendant-appellee.

## OPINION

CLABORNE, Judge.

Veda and Don Sirek[1] appeal from the trial court's grant of summary judgment in favor of appellee Fairfield Snowbowl, Inc. (Snowbowl). In granting summary judgment in favor of Snowbowl, the trial court held that an exculpatory clause in a ski equipment rental agreement executed by Sirek released any claims that Sirek may have had against Snowbowl for negligence. We reverse the summary judgment and remand to the trial court for further proceedings.

The material facts in this case are not in dispute. On January 16, 1986, Sirek travelled from Phoenix to Fairfield Snowbowl in Flagstaff to ski. Sirek owned her own ski boots, as well as skis with bindings. However, that day she travelled only with her boots, planning to rent skis and bindings at Snowbowl. Prior to renting the skis and bindings from Snowbowl, Sirek executed a rental agreement.[2] She read the rental agreement before signing it. The relevant parts of the agreement said:

> As part of the consideration of renting these skis and equipment, the user agrees to hold Fairfield Snow Bowl, Inc. and/or its employees harmless and free from blame and liability for any injury which may result during or from their use.

> I hereby agree that Fairfield Snow Bowl, Inc. is not liable for any injury incurred while using this rental equipment.

> I understand that the bindings furnished on said rental equipment are release type designed to reduce the risk and degree of injury from falling and that these bindings will not release under all circumstances and are no guarantee of my safety.

While skiing at Snowbowl that day, Sirek suffered injuries when she fell and her bindings failed to release. Sirek then sued Snowbowl, alleging that its employees had acted negligently in the selection of skis and bindings that were incompatible with her boots and also in the adjustment of the release settings on the bindings. In its answer, Snowbowl denied liability, but failed to include the word "release" in its recital of affirmative defenses. After some discovery had been conducted, Snowbowl moved for summary judgment claiming that the rental agreement released Snowbowl from any negligence claims. Sirek responded to the motion and filed a cross-motion for partial summary judgment against Snowbowl, claiming that the affirmative defense of release was waived because it was not included in the answer to Sirek's complaint that the release was void because it was against public policy and that the language did not effectively exculpate Snowbowl from its own negligence. In response, Snowbowl moved to amend its answer to include the release defense. The trial court granted Snowbowl's motion to amend and its motion for summary judgment and denied Sirek's

---

1. Although Veda Sirek and her husband filed suit jointly, Veda was the injured party. For clarity, she will be referred to as Sirek.

2. See Appendix A for the complete agreement.

cross-motion for partial summary judgment. Sirek timely appealed.

The issues presented are (1) whether Snowbowl's failure to affirmatively plead the release in its answer constituted a waiver of that defense, (2) whether the exculpatory clause contained in Snowbowl's rental agreement is unenforceable as against public policy, and (3) whether the exculpatory clause effectively releases Snowbowl from Sirek's claims of negligence.

### 1. *Did Snowbowl Waive Its Release Defense?*

Sirek first argues that Snowbowl's failure to affirmatively plead the release defense in its answer constituted a waiver of that defense. Sirek claims that the trial court erred in permitting Snowbowl to amend its answer to include this defense and in granting Snowbowl's motion for summary judgment based on the release provision.

We review the trial court's granting of Snowbowl's motion to amend the answer to determine if there was a clear abuse of discretion. *Swift v. City of Phoenix*, 90 Ariz. 331, 336, 367 P.2d 791, 794 (1961); *Hall v. Romero*, 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984). If the trial court did not abuse its discretion in permitting Snowbowl to amend its answer to include the release defense, then it was proper for the trial court to consider such a defense in weighing the motions for summary judgment.

To provide an answer to the waiver allegation, we must examine Rules 8(d), 12(b), 12(i) and 15(a) of the Arizona Rules of Civil Procedure and their relationship to each other. Rule 8(d) provides that, in pleading to a preceding pleading, a party shall affirmatively plead all affirmative defenses, which would include "release." This mandate is also expressed in Rule 12(b), which states that "[e]very defense, in law or in

fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required ...," except that seven enumerated defenses, which are not material here, may be made by motion. There is no dispute that Snowbowl failed to plead the release defense in its original answer. The penalty for failing to appropriately plead a defense is set forth in Rule 12(i), which provides that "[a] party waives all defenses and objections which that party does not present either by motion as hereinbefore provided, or, if that party has made no motion, in that party's answer or reply." However, Rule 15(a) states, in part, that "a party may amend the party's pleading ... by leave of court or by written consent of the adverse party. Leave to amend shall be freely given when justice requires."

Sirek argues that the trial court's granting of Snowbowl's motion to amend its answer and consideration of the release defense in granting Snowbowl's motion for summary judgment was contrary to the express provisions of Rule 12(i). As mentioned earlier, Rule 12(i) provides generally for the waiver of defenses that are not presented by motion or in the party's answer or reply. However, this rule only expressly removes the court's discretion to allow leave to amend a responsive pleading or motion with respect to four defenses: lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process. Rule 12(i)(1), Arizona Rules of Civil Procedure. These four defenses are strictly waived if omitted from a Rule 12 motion, or, if no Rule 12 motion is made, then from a responsive pleading or an amendment thereof permitted as a matter of course under Rule 15(a) (normally within twenty days after service). By specifically denying the court discretion with respect to these four defenses, the rule implicitly recognizes the court's discretion to permit other defenses to be asserted by amendment.[3] This inter-

---

3. Rule 12(i)(2) states that the defenses of failure to state a claim upon which relief can be granted, failure to join an indispensable party pursuant to Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading, by motion for judgment on the pleadings, or at the trial on the merits. Therefore, if any of these defenses or objections is not raised in a responsive pleading, the party may introduce the issue at any time up to and includ-

pretation is supported by the State Bar Committee Note to Rule 12(i) regarding the 1966 Amendments, which states that Rule 12(i) does not alter existing Arizona case law and "is in accord for example with *Baxter v. Harrison*, 83 Ariz. 354, 321 P.2d 1019 (1958)."

In *Baxter*, the defendants raised the affirmative defense of lack of capacity to sue for the first time in their motion for summary judgment. 83 Ariz. at 356, 321 P.2d at 1020–21. The trial court treated the allegations in the affidavit in support of summary judgment as amending the answer for this purpose. *Id.* The Arizona Supreme Court found that such treatment properly raised the issue of the capacity of plaintiffs to bring this action. *Id. Baxter* clearly acknowledged the trial court's power to allow amendment of the pleadings at any time. *Id.* Because Rule 12(i) is intended to be in accord with *Baxter*, the rule does not preclude the raising of a defense when it may have been omitted from the answer.

Sirek argues that *Baxter* can be distinguished because the defense in *Baxter* was not known at the time the answer was filed. Here, says Sirek, Snowbowl knew of the existence of the release at all times. However, the fact that Snowbowl was aware of the release at the time of its answer makes little difference unless Sirek suffered prejudice from the granting of the motion to amend. A court may properly allow a defendant to amend an answer to include an omitted defense as long as the plaintiff is not surprised or prejudiced thereby. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982); *Trujillo v. Brasfield*, 119 Ariz. 8, 9–10, 579 P.2d 46, 47–48 (App.1978); *Romo v. Reyes*, 26 Ariz.App. 374, 375–76, 548 P.2d 1186, 1188 (1976). The prejudice considered by the courts is generally "not that occasioned by defeat on the merits, but rather the inconvenience and delay suffered when the amendment

raises new issues or inserts new parties into the litigation." *Romo*, 26 Ariz.App. at 376, 548 P.2d at 1188. It is clear from the record that Sirek suffered no inconvenience or delay due to the amendment of Snowbowl's answer.

■ We find that Rule 12(i) of the Arizona Rules of Civil Procedure does not remove the trial court's discretion to grant leave to amend an answer to add an affirmative defense such as release. We find no abuse of discretion in granting the motion to amend here, particularly because Sirek can point to no prejudice.

2. *Did The Contract Release Snowbowl From Liability For Its Own Negligence?*

We now deal with the merits of this case. Sirek first argues that the exculpatory provisions in the rental agreement are unenforceable because they violate public policy. Sirek claims that it is against public policy to allow Snowbowl to insulate itself from its own negligence by inserting an inconspicuous disclaimer in a form rental agreement where Snowbowl's business requires a particular knowledge, skill and expertise upon which the normal consumer relies. We need not reach this issue because we hold that this exculpatory clause, as a matter of law, did not release Snowbowl from its own negligence.

■ Sirek next argues that, even if the release is generally valid, it fails to exculpate Snowbowl from the negligent acts of its employees because it does not expressly include negligence within its scope.[4] Interpretation and construction of contractual provisions are questions of law for the court to decide. *See Abrams v. Horizon Corp.*, 137 Ariz. 73, 78, 669 P.2d 51, 56 (1983).

An attempt to limit one's liability from one's own negligence is not uncommon. The general reaction of courts to this at-

---

ing trial and need not invoke the court's discretion to amend its original responsive pleading or motion.

4. Both parties assumed for the purpose of the summary judgment motions that Fairfield's agents did act negligently with respect to the selection of Sirek's skis and the setting of her bindings.

tempt has been unfavorable. The reason is simple. To relieve oneself of liability for one's own negligence may encourage carelessness. *Salt River Project Agricultural Improvement and Power Dist. v. Westinghouse Electric Corp.,* 143 Ariz. 368, 382–83, 694 P.2d 198, 212–13 (1984) (quoting *Union Pacific Railroad Co. v. El Paso Natural Gas Co.,* 17 Utah 2d 255, 259, 408 P.2d 910, 913 (1965)). Although it may sometimes be permissible for a party to contractually absolve itself from liability for negligence, such provisions are strictly construed against the party relying on them. *Id.* Not only should such attempts be clear and unequivocal, it seems reasonable that the language should alert the party agreeing to such a provision that it is giving up a very substantial right. *Id.* at 383, 694 P.2d at 213 (quoting *Basin Oil Co. of California v. Baash–Ross Tool Co.,* 125 Cal.App.2d 578, 594, 271 P.2d 122, 131 (1954)). "[A]ny attempt to limit one's liability for his own negligent act will not be inferred from an agreement unless such intention is expressed in clear and unequivocal terms." *O'Connell v. Walt Disney World Co.,* 413 So.2d 444, 446 (Fla.App. 1982). *Accord Colgan v. Agway, Inc.,* 150 Vt. 373, 553 A.2d 143, 145–46 (1988); *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 368, 400 N.E.2d 306, 309 (1979); *Doyle v. Bowdoin College,* 403 A.2d 1206, 1208 (Me. 1979); *Celli v. Sports Car Club of America, Inc.,* 29 Cal.App.3d 511, 516, 105 Cal. Rptr. 904, 909 (1972). Cases in some jurisdictions considering this issue have generally held that, although the specific word "negligence" need not appear in an exculpatory clause in order for such clause to have the effect of releasing claims based on negligent acts, words conveying a similar import must appear. *See Colgan v. Agway, Inc.,* 553 A.2d at 146; *Milligan v. Big Valley Corp.,* 754 P.2d 1063, 1068 (Wyo.1988). Other jurisdictions apparently feel that an exculpatory clause should not only be clear and unequivocal, but also

should include the word "negligence" to alert the party that it is giving up a substantial right. *See Jones v. Dressel,* 623 P.2d 370, 378 (Colo.1981); *Ciofalo v. Vic Tanney Gyms, Inc.,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 965, 177 N.E.2d 925, 926–27 (1961); *Boll v. Sharp & Dohme, Inc.,* 281 A.D. 568, 121 N.Y.S.2d 20, 22–24 (1953), *aff'd,* 307 N.Y. 646, 120 N.E.2d 836, 837 (1954).

Construing the language of Snowbowl's rental agreement strictly against Snowbowl, as we must, we conclude that although the language does alert Sirek as to the dangers inherent in skiing and to the possibility that the bindings may not always release, it does not alert the person who rents skis that Snowbowl is released from its own negligence in selecting appropriate skis or properly setting the bindings. *See Gross v. Sweet,* 424 N.Y.S.2d at 369, 400 N.E.2d at 310. Put another way, the agreement does not reflect the clear intent of the parties to bargain away the right to hold one party responsible for its own negligence. *See Salt River Project,* 143 Ariz. at 382–83, 694 P.2d at 212–13.

■ Snowbowl argues that the exculpatory clause contained in the rental agreement must be construed as including its own negligent acts because otherwise the release would be meaningless.[5] We disagree. Even if the release does not absolve Snowbowl from its negligent acts, it could be effective as against liability for injuries or damage occasioned during the use of the equipment and not caused by Snowbowl's negligent acts, such as those resulting from defects in the equipment. We hold that if Snowbowl intended to absolve itself from its own negligence, it should have clearly and explicitly stated so in the rental agreement. As stated in the well-reasoned dissenting opinion in *Schutkowski v. Carey,* 725 P.2d 1057, 1063 (Wyo. 1986), "[t]his requirement is most likely to alert the other party to the extent of the release which he is granting in the contract, which usually is prepared in advance.

---

**5.** Some cases from other jurisdictions support Snowbowl's position. *See, e.g., Milligan v. Big Valley Corp.,* 754 P.2d at 1068; *Poskozim v. Monnacep,* 131 Ill.App.3d 446, 86 Ill.Dec. 663, 665, 475 N.E.2d 1042, 1044 (1985); *Douglass v.*

*Skiing Standards, Inc.,* 142 Vt. 634, 459 A.2d 97, 98–99 (1983); *Zimmer v. Mitchell & Ness,* 253 Pa.Super. 474, 385 A.2d 437, 439 (1978), *aff'd,* 490 Pa. 428, 416 A.2d 1010 (1980).

In many respects this simply would seem to be fair." Indeed, Sirek introduced uncontradicted evidence that the 1985–86 Solomon Binding Manual, which Snowbowl's employees utilized in assisting them in selecting skis and bindings that would be compatible with Sirek's boots, contains sample release forms which expressly include negligence within their scope.

Reading the rental agreement strictly against Snowbowl, we find that Snowbowl failed to exempt itself from liability for its own negligent conduct. Therefore, the trial court was in error in granting summary judgment in favor of Snowbowl. We reverse the granting of Snowbowl's motion for summary judgment and remand for further proceedings to determine the validity of Sirek's claims.

We deny Sirek's request for attorney's fees as this action was not one "arising out of a contract." A.R.S. § 12–341.01(A).

KLEINSCHMIDT, P.J., and LANKFORD, J., concur.

## APPENDIX A

FAIRFIELD
**SNOWBOWL**
AND COUNTRY CLUB
P.O. Box 1268 / Flagstaff, Arizona 86002

**RENTAL AGREEMENT**

PLEASE PRINT CLEARLY

NAME: G. Berklieda    DATE: 1-16

ADDRESS: 635 San Ricardi    NUMBER OF DAYS RENTAL:

CITY/STATE: San Hedro Az    DATE DUE BACK: 1-16

PHONE: 098-5603    AGE: 49

1-16-86

CIRCLE APPROPRIATE ANSWERS AND FILL IN BLANKS

HEIGHT

WEIGHT: 15    BOOT SHOE SIZE    SIZE OF SKI    SEX: M

SKIING ABILITY: BEG / INT / ADV    DIN

SKI: 2030    FEE SKI    BOOT    POLE SIZE: 870  40    JUNIOR UP TO SIZE 4%

CHECK BOX IF CUSTOM FITTING IS REQUIRED OF ADJUSTMENT ☐    RELEASE SETTING INSPECTED BY: JB  5½  5½

setting 6

DRIVERS LICENSE OR PICTURE ID#: AZ 4781046    COMPLETE PACKAGE

RECEIVED BY: 86    SKIS ONLY

DEPOSIT REQUIRED IF NO I.D. IS RECEIVED BY CASHIER    BOOTS ONLY

POLES ONLY

TWO RENT

HALF DAY PACKAGE

DEPOSIT RETURNED TO CUSTOMER    EMPLOYEE / GROUP

SUBTOTAL

TAX

TOTAL: 12.00

PLEASE READ BEFORE SIGNING

### RENTAL AGREEMENT & LIABILITY RELEASE

I hereby accept rental equipment from the Fairfield Snow Bowl Rental Shop.

We recommend release bindings. They are not a guarantee of safety, but will reduce the chance of injury greatly. Final adjustment depend on weather, snow, physical condition, skiing ability and other factors. Final adjustment can be made only after use, and you alone can judge how tight the bindings should be. You are welcome to return for adjustment at any time...

As part of the consideration of renting these ski and equipment, the user agrees to hold Fairfield Snow Bowl, Inc. and/or its employees harmless and free from blame and liability for any injury...

Customer Signature: _____

Co-Signature (if under 18 years of age): _____

EXHIBIT A    194

## RENTAL AGREEMENT & LIABILITY RELEASE

I hereby accept rental equipment form the Fairfield Snow Bowl Rental Shop.

We recommend release bindings. They are not a guarantee of safety, but will reduce the chance of injury greatly. Final adjustments depend on weather, snow, physical condition, skiing ability and other factors. Best adjustment can be made only after use, and you alone can judge how tight the bindings should be. You are welcome to return for adjustment at any time.

As part of the consideration of renting these skis and equipment, the user agrees to hold Fairfield Snow Bowl, Inc. and/or its employees harmless and free from blame and liability for any injury which may result during or from their use.

I hereby agree that Fairfield Snow Bowl, Inc. is not liable for any injury incurred while using this rental equipment.

I understand that the bindings furnished on said rental equipment are release type designed to reduce the risk and degree of injury from falling and that these bindings will not release under all circumstances and are no guarantee of my safety.

I herby agree to reimburse Fairfield Snow Bowl, Inc. Rental Shop for the loss or theft of any and all equipment at the following prices: Skis and bindings $150.00. Ski boots $100.00. Ski Poles $25.00. There will be a charge assessed on any and all broken or excessively damaged equipment based on the cost of repairing said equipment or its replacement value, whichever is less.

Customer Signature _____ Signature

Co-Signature (if under 18 years of age) _____

14 K

**FILE COPY**