949 P.2d 552

**Geraldine and James MORGANTEEN, husband and wife, Plaintiffs–Appellants,**

v.

**COWBOY ADVENTURES, INC., an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 96–0243.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 28, 1997.

Review Denied Jan. 21, 1998.*

Dalton Gotto Samson & Kilgard by Mark D. Samson and Ron Kilgard, Phoenix, for Plaintiffs–Appellants.

Tiffany & Bosco, P.A. by Robert A. Royal and R.M. Joe Bushong, Phoenix, for Defendant–Appellee.

---

* Jones, V.C.J., and Martone, J., voted to grant review. Moeller, J., did not participate in the determination of this matter.

## OPINION

FIDEL, Judge.

Cowboy Adventures, Inc., a riding stable, requires trail ride customers to sign a document entitled "release and waiver of liability, assumption of risk, and indemnity agreement." James and Geraldine Morganteen, who signed the document, bring this negligence suit for injuries that Geraldine Morganteen sustained when she was bucked off a horse on a Cowboy Adventures ride. The trial court granted summary judgment for Cowboy Adventures, holding that the Morganteens waived the right to bring this suit. For reasons that follow, we reverse.

### I.

In order to participate in a Cowboy Adventures trail ride, the Morganteens signed a preprinted exculpatory covenant releasing Cowboy Adventures in advance from liability for any injuries arising during the ride. The covenant, which we append, set forth certain risks of horseback riding; obliged a signer to "abide by and follow any instructions given ... by the Stable or any of its employees, guides or wranglers"; and released the Stable, its owners, officers, agents, and employees, from any claim of liability, including any claim that they were "negligent in connection with [the signer's] riding experience or ability including but not limited to ... instruction on riding skills or leading and supervising riders."

During the trail ride, Mrs. Morganteen's horse began to skitter, Mrs. Morganteen called for help, and a wrangler shouted back instructions. The wrangler says he shouted, "Don't pull on the reins," which would have been good advice. Mrs. Morganteen says he shouted, "Pull on the reins," which Cowboy Adventures concedes would have been bad advice. In reviewing summary judgment, we must assume that the facts favor appellants, and therefore assume that Mrs. Morganteen's version is true. Mrs. Morganteen did pull on the reins, the horse bucked her off,

she broke her arm, and the Morganteens filed this suit.[1]

Granting summary judgment for Cowboy Adventures, the trial court explained in part,

Giving a fair reading to all of the terms of the release agreement, the Court must conclude that the stable has done all that could reasonably be expected of it to convey to the potential customer that there are both inherent dangers in riding a horse and that the stable did not intend to .be responsible for damages which occur as a result of the customer's voluntary decision to engage in this activity. Under the circumstances, the Court must conclude that the release condition, as a matter of law, serves to bar the plaintiff's action against the stable.

### II.

■ Although the trial court couched its minute entry in terms of "inherent dangers in riding a horse," the Morganteens do not attribute Mrs. Morganteen's injury to such a danger, but rather to a negligent instruction by the wrangler. Negligent trail guidance is not an inherent risk of a trail ride. We accept for the purpose of appeal that it was negligent to instruct Mrs. Morganteen, in the circumstances that confronted her, to pull on the reins. The question is whether the covenant effectively exculpated Cowboy Adventures from responsibility for the negligence of its wrangler.

We found a prospective exculpatory covenant unenforceable in *Sirek v. Fairfield Snowbowl, Inc.*, 166 Ariz. 183, 800 P.2d 1291 (App.1990), because the covenant did not expressly relieve the defendant of liability for its negligence or that of its employees. The plaintiff there was injured when the bindings on her rental skis failed to release. The trial court found her lawsuit against the ski rental shop barred by an exculpatory covenant in the rental agreement. We reversed. Reasoning that prospective exculpatory covenants, if enforceable, are strictly construed against the enforcing party, we found that the Snowbowl covenant failed to clearly con-

---

1. A recent statute, Arizona Revised Statutes Annotated ("A.R.S.") § 12–553 (Supp. 1996), entitled Limited Liability of Equine Owners, became effective after the filing of this suit and is inapplicable to this case.

vey Snowbowl's intent to absolve itself from its own negligence. *Id.* at 187, 800 P.2d at 1295.

In *Maurer v. Cerkvenik–Anderson Travel, Inc.,* 181 Ariz. 294, 890 P.2d 69 (App.1994), as in this case, the defendant did attempt expressly to absolve itself from its own negligence. The ·defendant, a travel agency, sold and managed student package tours. A covenant in the agency's standard contract absolved it from liability for death, personal injury, or property damage sustained on a tour "whether due to [the agency's] own negligence or otherwise." *Id.* at 298, 890 P.2d at 73. A student on a tour fell to her death from a moving train. Her parents sued the travel agency for negligent failure to disclose that three students had similarly died on prior tours. The trial court denied the agency's motion for summary judgment, finding the covenant, despite its negligence provision, "too general" to be enforced. *Id.* The trial court found that the covenant failed "to alert Plaintiffs' decedent to the specific risks that she was supposedly waiving." *Id.* Division Two of this court approved the trial court's reasoning and affirmed. *Id.*[2]

The *Sirek* and *Maurer* courts supported their decisions by reference to *Salt River Project Agric. Improv. & Power Dist. v. Westinghouse Electric Corp. ("SRP"),* 143 Ariz. 368, 694 P.2d 198 (1984). *See Sirek,* 166 Ariz. at 187, 800 P.2d at 1295; *Maurer,* 181 Ariz. at 298, 890 P.2d at 73. As *SRP* is the only case to date in which our supreme court has examined prospective exculpatory covenants, we turn our attention there as well.

The *SRP* case arose from SRP's negotiated purchase from Westinghouse of a $15,000

device to be used in the operation of a Westinghouse gas turbine generator. *See SRP,* 143 Ariz. at 372, 694 P.2d at 202. The device was flawed in design and failed, causing over $1.9 million in damages to SRP's generator. When SRP sued, Westinghouse responded by invoking a "LIMITATION OF LIABILITY" clause in the parties' contract that limited Westinghouse's liability to "the price of the product or part [$15,000] on which such liability is based." *Id.* at 373, 694 P.2d at 203.

The supreme court addressed the validity of this clause in a section of its opinion headed, "CAN LIABILITY IN TORT. BE BARGAINED AWAY?" *Id.* at 382–85, 694 P.2d at 212–15. The court answered that question with a qualified yes. The court stated, "The law disfavors contractual provisions by which one party seeks to immunize himself against the consequences of his own torts." *Id.* at 383, 694 P.2d at 213. But the court described "sound reasons" in "a commercial setting" for an exception to the law's disfavor:

> This exception to the ancient principle that a party may not immunize himself from the consequences of his own negligence is predicated upon the consideration that businessmen can bargain over which party is to bear the risk of damage and set the price accordingly, thus achieving a more rational distribution of the risk than the law would otherwise allow.

*Id.* (quoting *Jig the Third Corp. v. Puritan Marine Ins.. Underwriters Corp.,* 519 F.2d 171, 176 (5th Cir.1975)).

The *SRP* court placed three conditions upon the enforcement of a prospective excul-

---

**2.** In *Valley Nat'l Bank v. National Ass'n for Stock Car Auto Racing, Inc.,* 153 Ariz. 374, 736 P.2d 1186 (App.1987), Division Two considered another covenant in which a defendant expressly undertook to absolve itself from its own negligence. That case concerned· an exculpatory covenant that an automotive race track required pit area visitors to sign. We find little guidance in *Valley Nat'l Bank,* however, because the court treated the covenant as one intended for a knowledgeable group of racing professionals and not for the general public at large. To gain access to the pit area, visitors had to present themselves at a control point and sign a release. Access was purportedly limited to racing professionals,

though enforcement was lax. The plaintiffs, though spectators at the race, were a veteran race car driver and his wife, familiar by personal experience with the risk that cars could crash or flip into the pit. *Id.* at 376, 736 P.2d at 1188. They entered through a "drivers" control point. A car did crash into the pit, the wife was injured, and the parties sued. In response to the plaintiffs' claim that the releases were invalid because they were not intended for spectators, the court stated, "The [plaintiffs] represented, by signing the documents, that they were not general spectators. They are now estopped from asserting otherwise in order to defeat the release." *Id.* at 378, 736 P.2d at 1188.

patory covenant: (1) that there "is no public policy impediment to the limitation"; (2) "that the parties did, *in fact,* bargain for the limitation"; and (3) that the limiting language be strictly construed against the party seeking to enforce it. *Id.* The court placed particular emphasis on the second factor in discussing the law of waiver, which requires "an intentional relinquishment of a known right." *Id.* at 385, 694 P.2d at 215 (quoting *City of Tucson v. Koerber,* 82 Ariz. 347, 313 P.2d 411 (1957)). The court stated, "Tort remedies may not be waived in an unknowing exchange of forms.... An actual bargain must be made by those responsible for the transaction." *Id.*

There is an obvious difference between *SRP* and this case. *SRP* involved a purchase agreement negotiated by two commercial entities; this case does not. This difference, however, does not qualify the Cowboy Adventures covenant for *less* rigorous scrutiny than the covenant in *SRP.* When the *SRP* court broadly stated the law's disfavor of contractual provisions immunizing a party from the consequences of its own torts, the court did not limit its disfavor to commercial contracts. To the contrary, the court stated, "[C]ourts take the most relaxed view when the parties are business entities." *Id.* at 383, 694 P.2d at 213.[3] The court left unstated what a "less relaxed view" would entail when,

as here, the covenanting parties are not both business entities. To resolve the issues the Morganteens present, however, it suffices to infer, as the *Sirek* and *Maurer* courts implicitly inferred, that, at a minimum, the *SRP* standards must be satisfied.

The *SRP* court did not announce a rule of absolute disfavor for prospective exculpatory covenants in cases such as this.[4] Nor do the Morganteens contend for such a rule. Nor do the Morganteens argue that the Cowboy Adventures covenant is unenforceable as a matter of law. They argue only that its enforceability turns upon questions of fact that require reversal of summary judgment.[5] Confining ourselves to that issue, we agree.

■ We return to the supreme court's observation in *SRP* that tort remedies may not be waived unknowingly. "An actual bargain must be made" to establish an "intentional relinquishment of a known right." *Id.* at 385, 694 P.2d at 225. Here, the evidence did not permit the trial court to find as a matter of law that either a bargain or an intentional relinquishment occurred. To establish a waiver, Cowboy Adventures emphasizes that its release form instructed the Morganteens in boldface print that they were giving up their right to sue for damages and that their signatures constituted a promise

3. The cases also differ in the nature of the injury—property damage in *SRP,* personal injury in this case. We find no reasoned basis, however, for the law to look more favorably upon efforts to immunize oneself from personal injury liability than upon efforts to immunize oneself from property damage liability.

4. The *Sirek* and *Maurer* courts did not address the validity of requiring a non-commercial client to sign a prospective exculpatory covenant as a condition of purchasing a service; they determined only that the covenants in question were insufficiently specific to be enforced. *See Sirek,* 166 Ariz. at 186–87, 800 P.2d at 1294–95; *Maurer,* 181 Ariz. at 298, 890 P.2d at 73. The court in *Valley Nat'l Bank* did find such a covenant valid, but that case is limited by the circumstances described in note 2, *supra.* Further, the court did not discuss *SRP* or address the SRP conditions for enforcement of a prospective exculpatory covenant.

5. The Morganteens do raise, but decline to argue, the question whether prospective exculpatory covenants of the Cowboy Adventures variety constitute an express assumption of risk, the applica-

tion of which must be left to the jury pursuant to Article XVIII, § 5 of the Arizona Constitution. The Morganteens suggest that our analysis should be "color[ed]" by an awareness of Article XVIII, § 5, and by an awareness that prospective exculpatory covenants are regarded by tort authorities as a form of express assumption of risk. *See generally* W. PAGE KEETON ET AL., PROSSER & KEETON ON TORTS, § 68, at 482–86 (5th ed. 1984 & Supp.1988); RESTATEMENT (SECOND) OF TORTS § 496B (1965); JEFFERSON L. LANKFORD & DOUGLAS A. BLAZE, THE LAW OF NEGLIGENCE IN ARIZONA § 5.5(1), at 121–22 (1992 & Supp.1996). Yet the Morganteens state that they "do not argue here (nor did they below) that this constitutional provision *requires* that the enforceability of the release always be submitted to the jury." In civil appeals, unlike criminal *Anders* appeals—*see Anders. v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)—we do not consider issues that appellants identify as "arguable," when the appellants choose not to argue them. Accordingly, we do not address the applicability of Article XVIII, § 5 to this case.

not to sue. We do not believe, however, that *SRP* permits the conclusion that one's signature on a preprinted release may be construed as a matter of law as an intentional relinquishment of a known right.

Further, although the Cowboy Adventures covenant (in contrast to the *Maurer* covenant) expressly described the risk that ultimately confronted the plaintiff—the risk of being bucked from a horse—there is an incongruity among other clauses relating to the negligence of wranglers. Paragraph 5 releases "the Releasees from any claim that such Releasees are or may be negligent in connection with ... instruction on riding skills or leading and supervising riders," and Paragraph 6 indemnifies the stable and its employees from liability "arising out of ... any acts or omissions of wranglers." But Paragraph 7 obliges a rider "to abide by and follow any instructions given ... by the ... wranglers with regard to my use of my horse." The Morganteens define as an issue of fact whether "Mrs. Morganteen 'understood and accepted' that she must *both* follow the wrangler's advice *and* release him [from liability] if the advice was negligent." We agree that this question could not be resolved against the Morganteens as a matter of law.

For the foregoing reasons, we reverse the summary judgment that the trial court entered in favor of Cowboy Adventures and remand for proceedings consistent with this opinion.

NOYES, P.J., and GARBARINO, J., concur.