11 P.3d 421

Jonathan E. BENJAMIN and Laura, K. Benjamin, husband and wife, Plaintiffs–Appellants,

v.

GEAR ROLLER HOCKEY EQUIPMENT, INC., an Arizona corporation; Roller Skating Associates, an unknown business entity; Chandler Sports Spectrum, an unknown business entity; Sport Court, Ltd., a foreign corporation, Defendants–Appellees.

No. 1 CA–CV 99–0333.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 12, 2000.

Evans & Stuart, P.L.L.C., by Steven L. Evans, Christopher G. Stuart, Phoenix, for Plaintiffs–Appellants.

Brownlee Law Firm, P.C., by Joseph L. Brownlee, Phoenix, for Defendants–Appellees.

## OPINION

ACKERMAN, Judge.

¶ 1 This lawsuit arises out of injuries sustained by Jonathan E. Benjamin ("Benjamin") during a roller hockey game. Benjamin and his wife, Laura K. Benjamin, appeal from the trial court's entry of summary judgment against them in their negligence action against Gear Roller Hockey Equipment, Inc. ("Gear"), the owner and operator of the roller rink where the accident occurred. The trial court concluded that the "Amateur Athletic Waiver and Release of Liability" ("Release") Benjamin signed before participating in the hockey league absolved Gear of any liability for his injuries. We agree.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 In 1995, Benjamin participated in a recreational roller hockey league. He was a 32 year-old lawyer who had played in recreational roller and ice hockey leagues for 15 years. His team played at various rinks throughout the Phoenix metropolitan area, including the roller rink owned by Gear, the Chandler Sports Spectrum Skating Rink ("Spectrum Rink").

¶ 3 Before playing at the Spectrum Rink, Benjamin was required to and did sign the Release. The Release was for the "WINTER 95/96 HOCKEY LEAGUE" and stated, in part:

> In consideration of being allowed to participate in any way in the CHANDLER SPORTS SPECTRUM athletic/sports program, and related events and activities the undersigned:
>
> 1. Agree that prior to participating, they each will inspect the facilities and equipment to be used, and if they believe anything is unsafe, they will immediately advise their coach or supervisor of such condition(s) and refuse to participate.
>
> 2. Acknowledge and fully understand that each participant will be engaging in activities that involve risk of serious injury, including permanent disability and death, and severe social and economic losses which might result not only from their own actions, inactions or negligence or of any equipment used [sic]. Further, that there may be other risks not known to us, or not reasonably foreseeable, such as disability or death.
>
> 3. Assume all the foregoing risks and accept personal responsibility for the damages following such injury, permanent disability or death.
>
> 4. Release, waive, discharge and covenant not to sue THE CHANDLER SPORTS SPECTRUM ... hereinafter referred to as "releases", from demands, losses or damages on account of injury, including death or damage to property, *caused or alleged to be caused in whole or in part by the negligence of the releasee or otherwise.*

> \* \* \*

> THE UNDERSIGNED HAVE READ THE ABOVE WAIVER AND RELEASE, UNDERSTAND THAT THEY HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT AND SIGN IT VOLUNTARILY.

(Emphasis added.)

¶ 4 Plaintiff stated he normally reads such releases before signing them. He does not contend there is any issue of fact here regarding whether he read and understood the Release when he signed it.

¶ 5 On November 8, 1995, Benjamin was playing in a roller hockey game at the Spectrum Rink. Near the end of the game, Benja-

min was racing another player for a loose puck when he fell and suffered multiple fractures to his left leg. Benjamin contends that his left skate was stopped by a raised floor tile resulting in his injury.

¶ 6 Benjamin alleges that Gear negligently maintained an uneven skating floor, which caused his injury. The trial court granted summary judgment in favor of Gear on the basis of the Release. Benjamin timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 12–2101(B) (1994).

## DISCUSSION

¶ 7 In reviewing a summary judgment, we consider *de novo* whether the trial court correctly applied the law. *See Chicago Ins. Co. v. Manterola*, 191 Ariz. 344, 346, ¶ 7, 955 P.2d 982, 984 (App.1998). We view the facts in the light most favorable to the party against whom judgment was awarded. *See L. Harvey Concrete, Inc. v. Agro Constr. & Supply Co.*, 189 Ariz. 178, 180, 939 P.2d 811, 813 (App.1997).

¶ 8 Absent any public policy to the contrary, Arizona allows parties to agree in advance that one party shall not be liable to the other for negligence. *See Salt River Project Agric. Imp. And Power Dist. ("SRP") v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 382–83, 694 P.2d 198, 212–13 (1984); *Valley Nat'l Bank v. National Ass'n for Stock Car Auto Racing, Inc. ("NASCAR")*, 153 Ariz. 374, 377, 736 P.2d 1186, 1189 (App.1987). However, Arizona courts traditionally look upon such releases with disfavor out of concern that they may encourage carelessness. *See SRP*, 143 Ariz. at 382, 694 P.2d at 212. Accordingly, we construe the limiting language of a release strictly against the party relying upon it. *See id.* at 383, 694 P.2d at 213.

¶ 9 Benjamin contends the Release is unenforceable because it failed to specify the exact risks he was releasing. He asserts the Release does not mention the specific sporting activity involved (non-contact roller hockey) or any of the general or specific risks associated with that activity. As a result, Benjamin claims there is no evidence that he knew specifically which of Gear's activities, or what aspect of hockey league play, was covered by the Release. For these reasons, Benjamin asserts that this case is akin to *Sirek v. Fairfield Snowbowl, Inc.*, 166 Ariz. 183, 800 P.2d 1291 (App.1990), *Maurer v. Cerkvenik–Anderson Travel, Inc.*, 181 Ariz. 294, 890 P.2d 69 (App.1994), *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 965 P.2d 47 (App.1998), and *Morganteen v. Cowboy Adventures, Inc.*, 190 Ariz. 463, 949 P.2d 552 (App.1997). We disagree.

¶ 10 *Sirek* involved a release signed as part of a ski rental agreement. The plaintiff, Ms. Sirek, rented skis and bindings from the defendant. Ms. Sirek read and signed a release that contained some general waiver agreements. The release stated that it applied to "any injury" that might result from using the rental equipment, but did *not* specifically mention any release of liability for the defendant's own negligence. Later that day, Ms. Sirek was injured when her bindings did not release during a fall. Sirek sued the defendant, alleging that the defendant's employees negligently selected the wrong skis and bindings and that they negligently adjusted the bindings' release settings. *See Sirek*, 166 Ariz. at 184, 800 P.2d at 1292.

¶ 11 In reversing the trial court's summary judgment for defendant, we noted the importance of clarity when it comes to a party's attempt to insulate itself from liability for its own negligence. We held that "if [the defendant] intended to absolve itself from its own negligence, it should have clearly and explicitly stated so in the rental agreement." *Sirek*, 166 Ariz. at 187, 800 P.2d at 1295. Because there was no explicit release of liability for the defendant's own negligence, we held that the release must be construed strictly as inapplicable to claims based on that negligence. *See id.* at 187–88, 800 P.2d at 1295–96.

¶ 12 Unlike the release in *Sirek*, however, the Release here expressly relieved Gear of liability "caused or alleged to be caused in whole or in part by the negligence of the releasee." Thus, Gear's release *did* expressly release liability caused by its own negligence. *Sirek* provides no assistance to Benjamin.

¶ 13 The present case also differs substantially from *Maurer v. Cerkvenik–Anderson Travel, Inc.*, 181 Ariz. 294, 890 P.2d 69 (App. 1994). In *Maurer*, a travel agency arranged trips to Mazatlan, Mexico, for college students celebrating spring break. The trips included an eighteen-hour train ride from Nogales to Mazatlan aboard what brochures described as a "Party Train." The agency did not disclose to its customers that three students had previously died on the "Party Train" trips. When another student died, her parents brought a wrongful death action against the travel agency alleging, among other things, that the agency breached a duty to disclose material facts about the safety of its trips. The agency defended partly on the basis of a release of liability that the student signed prior to the trip. *See id.* at 295–98, 890 P.2d at 70–73.

¶ 14 The court of appeals first held that the travel agency had a duty to its principals to disclose material risks known by the agent but not by the principal. *See id.* at 296–97, 890 P.2d at 71–72. On the release issue, the trial court stated that the "alleged defense is too general and doesn't alert Plaintiff's decedent to the specific risks that she was supposedly waiving." *Id.* at 298, 890 P.2d at 73. The court of appeals affirmed, holding that there was a question of fact whether the release was valid under these circumstances. *See id.* at 299, 890 P.2d at 74.

¶ 15 We agree that a general release of all liability cannot absolve an agent of its duty to disclose unexpected and extraordinary risks known to it but not known to its principals. We do not believe, however, that *Maurer* requires a specific listing of every one of the possible causes of an accident for a release to be effective. It is enough if the signing party understands the types of risks covered by the release.

¶ 16 Here, Plaintiff was an experienced skater, familiar with the risks of roller hockey. He knew that problems with the skating surface—such as "debris"—could cause an accident. The Release itself warned participants to inspect the "facilities" for "unsafe" conditions, thus providing notice (if such were needed) that unsafe conditions could exist in the facilities and could cause an accident, but nevertheless would be included in the waiver. The alleged cause of this accident was one of the hazards generally associated with roller hockey and contemplated in the Release; it was not an extraordinary and unknown risk such as the unexpectedly lethal "Party Train" in *Maurer.* We hold that the Release here sufficiently specified the potential risks Benjamin was assuming, including the possibility of an unsafe condition on the floor.

¶ 17 This case also differs significantly from *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 965 P.2d 47 (App.1998). In that case, there was a question of fact whether the release covered the injury-causing activity. The *Bothell* release mentioned various inherent risks of dealing with horses, such as the risk of injury from approaching, handling, mounting, riding, or dismounting a horse. *See id.* At 317, ¶ 12, 965 P.2d at 51. The actual release language, however, only applied to liability arising from "horse riding or horse-drawn vehicle activities." The plaintiff in that case was not injured during her "horse riding" activity, but rather, while attempting to lead a different horse to a grassy area to graze after her ride was over. Because of the ambiguity in the phrase "horse riding," we concluded there was a question of fact as to whether the plaintiff's non-riding activity was within the scope of the release. *See id.* at 318, ¶ 15, 965 P.2d at 52. The holding in *Bothell* provides no assistance to Benjamin because he was injured while engaged in the very hockey activities expressly covered by the Release: the "WINTER 95/96 HOCKEY LEAGUE."

¶ 18 Finally, Benjamin's position draws no support from *Morganteen v. Cowboy Adventures, Inc.*, 190 Ariz. 463, 949 P.2d 552 (App. 1997). In that case, a factual dispute existed as to whether the plaintiff had actually read and understood the release she signed. Here, there is no such dispute of fact.

¶ 19 We find this case closer to the situation in *Valley National Bank v. NASCAR*, 153 Ariz. 374, 736 P.2d 1186 (App.1987). In that case, Mr. Pray was an experienced race car driver. He attended a race with his wife, and they both obtained tickets to the "pit" area of the racetrack so they could talk with

a friend. They each signed two release documents, one explicitly entitled "Release of Liability." Mrs. Pray was injured when a collision caused a car to enter the pit area. Mr. Pray contended at trial that they did not read or understand the release, but there was conflicting evidence and the jury found for defendants. *NASCAR*, 153 Ariz. at 376–78, 736 P.2d at 1188–90.

¶ 20 The court of appeals held that releases of liability may be enforceable so long as the "terms were brought home to the plaintiff." *NASCAR*, 153 Ariz. at 377, 736 P.2d at 1189. Mr. Pray's deposition testimony suggested that he and his wife were well aware of the content of the releases used at all NASCAR events for years. The jury, therefore, could well have found that the Prays understood the release and that the release barred their claims. *See id.* at 378–79, 736 P.2d at 1190–91.

¶ 21 Here, Benjamin was an experienced rollerblader who had participated in recreational roller and ice hockey leagues for 15 years. He was aware of the normal risks of roller hockey. He was also a lawyer who testified that he understood the meaning of the term negligence. The language and form of the Release clearly absolved Gear from liability for its own negligence and advised Benjamin that he was releasing any claims for injury "caused in whole or in part by the negligence of [Gear]" relating to his roller hockey activities.

¶ 22 Benjamin has not demonstrated any public policy reason to disregard the Release. He asserts that the Release is unconscionable because there was unequal bargaining power between the parties. Recreational roller hockey, however, is not an activity affected with a public interest. Benjamin could have chosen not to participate, or

he could have skated at a different venue. Accordingly, we are not persuaded by Benjamin's public policy argument. *See NASCAR*, 153 Ariz. at 377, 736 P.2d at 1189 (applying similar analysis to automobile racing). We conclude the Release was a valid release of claims based on Gear's alleged negligence.

¶ 23 Gear seeks an award of its attorneys' fees on appeal pursuant to A.R.S. § 12–341.01(A) (Supp.1999). It asserts that this dispute arose out of a contract—namely the Waiver and Release of Liability contract. However, this is a negligence action, not a contract action. The thrust of Plaintiff's claim was in tort. Therefore, § 12–341.01(A) does not apply. *See Sirek v. Fairfield Snowbowl, Inc.*, 166 Ariz. 183, 188, 800 P.2d 1291, 1296 (App.1990) (denying request for attorneys' fees because personal injury suit against ski rental company did not arise from the release); *Fry's Food Stores v. Mather & Assocs., Inc.*, 183 Ariz. 89, 92, 900 P.2d 1225, 1228 (App.1995) (noting that the legislature did not intend for every tort case to be eligible for an award of fees where the parties have some type of contractual relationship). Accordingly, we deny Gear's request for fees.

## CONCLUSION

¶ 24 We affirm the judgment of the trial court.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, JAMES B. SULT, Judge.