83 P.3d 1090

Charles PHELPS, an Arizona resident, Plaintiff–Appellant,

v.

FIREBIRD RACEWAY, INC., an Arizona corporation aka and/or dba Firebird International Raceway, a corporation, Defendant–Appellee.

No. 1 CA–CV 03–0404.

Court of Appeals of Arizona, Division 1, Department E.

Jan. 29, 2004.

Review Granted June 29, 2004.

Skousen, Skousen, Gulbrandsen & Patience, P.C. By David L. Abney, Mesa, Attorneys for Plaintiff–Appellant.

Jennings, Strouss & Salmon, P.L.C. By Jay A. Fradkin and John J. Egbert, Phoenix, Attorneys for Defendant–Appellee.

OPINION

EHRLICH, Judge.

¶ 1 Charles Phelps appeals from a summary judgment in favor of Firebird Raceway, Inc. ("Firebird"). The trial court ruled that, in the absence of any material fact, Phelps' claim of negligence on the part of Firebird personnel was barred by the release and waiver agreements that he signed before he entered a Firebird race. For reasons discussed below, we affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

¶ 2 Phelps was a professional race-car driver who had driven more than 100 races at

Firebird from 1987 to 2001. Before participating in a Firebird race, a driver must sign a "Release and Covenant Not to Sue" ("Release")[1] and a "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" ("Waiver").[2] Phelps signed both documents before the race he entered on July 14, 2001,[3] during which he lost control of his vehicle and ultimately crashed into a wall. Phelps' vehicle became engulfed in flames, and he was severely burned.

¶ 3 Phelps sued Firebird, alleging that its personnel were negligent in failing to more quickly rescue him from his burning vehicle and provide emergency medical care. Both parties moved for summary judgment regarding whether the Release and Waiver barred Phelps' claim against Firebird for negligence. Phelps argued that, according to Article 18, section 5 of the Arizona Constitution ("Article 18, section 5"), the defense of assumption of risk was a question of fact for the jury and not a question to be decided by the court as a matter of law. Firebird responded that, because the Release and Waiver were express contractual assumptions, they were not within the purview of Article 18, section 5 and could be decided by the court as a matter of law.

¶ 4 The trial court denied Phelps' motion for summary judgment and granted that of Firebird, agreeing with Firebird that the Release and Waiver barred Phelps' claim of negligence. Phelps appealed. He pursues his contention that Article 18, section 5 mandates that the enforceability and validity of express release and waiver agreements present questions of fact that cannot be decided by a court as a matter of law.

## DISCUSSION

■ ¶ 5 We accept the facts as most favorable to Phelps and then review the summary judgment against him de novo. *Estate of Hernandez v. Flavio,* 187 Ariz. 506, 509, 930 P.2d 1309, 1312 (1997). Issues of constitutional interpretation also are reviewed de novo. *Massey v. Bayless,* 187 Ariz. 72, 73, 927 P.2d 338, 339 (1996).

■ ¶ 6 Phelps asserts that release and waiver agreements like the ones he signed are no more than "express assumptions of the risk" within Article 18, section 5, which provides:

> The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.

Accordingly, Phelps argues, whether a release/waiver bars a tort claim because he assumed the risk is not a defense that can be

---

1. In the Release, Phelps agreed:
   **I HEREBY RELEASE, DISCHARGE AND ACQUIT** ... Firebird ... from any and all liability, claims, actions, or demands, including but not limited to claim for death, which I may hereafter have because of my injury, death, or damage while on the track, ... or when participating in any race activities.
   Also,
   **I UNDERSTAND** that participating in drag racing contains **DANGER AND RISK** of injury or death, ... but, nevertheless, **I VOLUNTARILY ELECT TO ACCEPT THE RISKS** connected with my entry into the restricted area and with racing.

2. The Waiver provided that Phelps "HEREBY RELEASES, WAIVES, DISCHARGES, AND COVENANTS NOT TO SUE" Firebird for:
   INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED, WHETHER CAUSED BY THE NEGLIGENCE OF RELEASEES OR OTHERWISE, while the Undersigned is in or upon the RESTRICTED AREA, and/or competing ... or for any purpose participating in such event.
   It also stated that:

EACH OF THE UNDERSIGNED expressly acknowledges that the ACTIVITIES OF THE EVENT ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED also expressly acknowledges the INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.
   EACH OF THE UNDERSIGNED further expressly agrees that the foregoing [Waiver] extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS.

3. This release of liability apparently is usual pursuant to Arizona Revised Statutes section 12–556 (2003), which provides that "a person who operates a [racetrack] may require a [participant] to sign a motor sport liability release form as a condition of admission." It also provides that the racetrack is "not liable for an injury to or the death of a [participant], unless the injury or death is a direct result of intentional misconduct or gross negligence."

decided as a matter of law but a question of fact for the jury.

¶ 7 Article 18, section 5 has never been applied in the context of an express contractual assumption of the risk. There is, though, a notable difference between such a contract and the defense of assumption of risk as developed in tort common law to which the constitutional provision generally applies. Express contractual assumptions are governed by contract principles, and, thus, any question of their enforceability may be analyzed in the context of a summary judgment with the regular resolution that these assumptions or releases are enforceable as a matter of law. *Jacobsen Constr. Co. v. Structo–Lite Eng'g, Inc.*, 619 P.2d 306, 310 (Utah 1980)("An express assumption of risk involves a contractual provision in which a party expressly contracts not to sue for injury or loss which may thereafter be occasioned by the acts of another.").

¶ 8 Like the Utah Supreme Court in *Jacobsen Construction Company*, the courts in the several jurisdictions that have considered the issue have concluded that an express assumption of risk is a separate and distinct concept governed by contract-law principles. For example, the Supreme Court of Hawaii decided that the concept of an express contractual assumption of risk survived the legal merger of comparative negligence and products liability because an "[e]xpress assumption of risk is essentially contractual in nature and does not conflict with the basic concept of apportionment under comparative fault involving negligence." *Larsen v. Pacesetter Sys., Inc.*, 74 Haw. 1, 837 P.2d 1273, 1291 (1992), *amended on reh'g in part*, 74 Haw. 650, 843 P.2d 144 (1992); *see Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780, 783 (1983) (The "merger of assumption of risk with contributory negligence is not intended to merge that category of assump-

tion of risk known as 'express' assumption of risk."); *Jacobsen Constr.*, 619 P.2d at 310 (recognizing express assumption of risk as unique and excluding it from the "assumption of risk terminology").

¶ 9 Arizona's legislative history suggests that Article 18, section 5 was initially enacted to protect laborers from the defense of implied assumption of risk in litigation arising from workplace injuries and deaths, and not from express contractual assumptions of the risk. *See Kilpatrick v. Superior Court*, 105 Ariz. 413, 416, 466 P.2d 18, 21 (1970)(Article 18 is "designed to protect the rights of the laboring class from the evils which over the preceding century had eroded rights believed necessary to do justice between workmen and their employers."); *see also The Records of the Arizona Constitutional Convention of 1910* [hereinafter *"Records of 1910"*] 72–73, 1227–28 (John Goff, ed.)(Article 18, section 5 was introduced as Proposition 88, § 2 to limit the defenses of "fellow-servant" and "assumption of risk" in actions for injury or death related to hazardous occupations, and to require that a jury resolve the defense of contributory negligence in such cases.).[4]

¶ 10 The fellow-servant doctrine and the defenses of implied assumption of risk and contributory negligence "slipped casually into the common law as a defense to the master's wrong irrespective of the degree of negligence of the servant and of the magnitude of the risk to which the master exposed him." *Kilpatrick*, 105 Ariz. at 416 n. 1, 466 P.2d at 21 n. 1. It was to such an application of the doctrine of implied assumption of risk, and the usurpation of the jury's role, that the framers of the Arizona Constitution responded. *Varela v. Reid*, 23 Ariz. 414, 418–20, 204 P. 1017, 1019–20 (1922). Accordingly, when the drafters of the Constitution discussed "the defense of assumption of risk," they were referring to an implied assumption of

4. Proposition 88, § 2 provided:

No law shall be enacted and no rule of law shall be recognized in the State of Arizona whereby the defense of "fellow servant" or the defense of "assumption of risk" shall be recognized in actions to recover damages in cases of injury or death covered in the first section of this article [related to hazardous occupations]; and any defense of "contributory negligence" permitted by statute or by any court in such cases shall be a matter of determination by a jury, who shall decide to what extent damages shall be allowed in proportion to any degree of negligence, less than complete and willful negligence, provided that whenever any defense of contributory negligence shall be set up, the presumption shall be that there has been no contributory negligence on the part of the individual killed or injured, and the burden of proof of the asserted contributory negligence shall be upon the defendant.
*Records of 1910*, at 1227–28.

**152**

risk that had developed in the common law of torts and that the courts had consistently used to bar suits by injured laborers. In Article 18, section 5, the framers were not referring to an express contractual assumption of risk governed by contract-law principles. Rather, those concerns about an express assumption of risk in the employment context were addressed in section 3 of Article 18 that specifically declared "null and void" a contract that served to prospectively release an employer from liability for personal injuries to employees at work.

¶ 11 Before the conclusion of the Arizona Constitutional Convention, the delegates struck Proposition 88, § 2, which was confined to claims arising from injuries and deaths related to hazardous occupations, and substituted the broader language applicable to "all cases whatsoever" adopted from the Oklahoma Constitution. *Records of 1910*, at 883–84; *see also* OKLA. CONST. art. 23, § 6. The provision's origin and its intent to overcome an onerous judicial application of the legal defense of an implied assumption of risk supports the conclusion that the constitutional provision does not apply to express contractual assumptions of risk.

■ ¶ 12 In addition, when a provision is adopted from another jurisdiction, we consider that jurisdiction's decisions construing the provision persuasive. The Arizona Supreme Court has expressly acknowledged as compelling the Oklahoma cases interpreting the Oklahoma version of Article 18, section 5. *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 133 n. 4, 717 P.2d 434, 437 n. 4 (1986); *superseded by statute, see Dykeman v. Engelbrecht*, 166 Ariz. 398, 803 P.2d 119 (App.1990)("Oklahoma's experience with the adoption of comparative negligence is thus especially enlightening in view of their constitutional provision identical to art. 18, § 5.").

¶ 13 Phelps' argument has been rejected in Oklahoma. Its courts have found exculpatory agreements to be valid and enforceable if the agreement meets certain criteria: clear

identification of the party to be relieved from liability; clear identification of the risks and activities from which relief from liability is being sought; clear intent to exonerate the defendant from liability; not between parties with inequitable bargaining power; and no violation of public policy. *Schmidt v. United States*, 912 P.2d 871, 873–75 (Okla.1996).

■ ¶ 14 This court has held that one party may release another party from liability for negligence. *Benjamin v. Gear Roller Hockey Equip., Inc.*, 198 Ariz. 462, 464 ¶ 8, 11 P.3d 421, 423 (App.2000). Such releases are disfavored, however, and, therefore, strictly construed. *Id.*

¶ 15 The Oklahoma constitutional provision that requires that the defense of an assumption of the risk be a question for the jury has not been held by Oklahoma courts to preclude summary judgment in the context of a contractual release. The Oklahoma courts have held that "[d]etermining the construction of an unambiguous contract is a matter of law for the court." *Martin v. A.C.G., Inc.*, 965 P.2d 995, 997 ¶¶ 7–8 (Okla.Civ.App.Div.1998)(affirming summary judgment for health club based on exculpatory clause in contract and insufficient evidence to establish gross negligence when member injured using machine); *see also Manning v. Brannon*, 956 P.2d 156, 160 (Okla.Civ.App.Div.1997)(exculpatory contract signed by jumper entitled skydiving school to judgment as matter of law in personal-injury case arising from malfunction of jumper's parachute).

¶ 16 We have similarly analyzed exculpatory contracts with regard to a defense of an express contractual assumption of risk.[5] Relying on contract law to construe the agreements, and in the absence of issues of material fact, we have declared that a court can decide the issue of the enforceability of a contract as a matter of law. For instance, in *Benjamin*, this court affirmed a summary judgment based on the plaintiff's signed release in a personal-injury case, noting that "Arizona allows parties to agree in advance

---

**5.** Unlike the Arizona courts, however, the Oklahoma courts also allow exceptions to their constitutional provision even in cases of an implied assumption of risk. *See Reddell v. Johnson*, 942 P.2d 200, 203 ¶ 13 (Okla.1997)(holding that court may rule on defense of assumption of risk without presenting it to jury even when no express release if plaintiff failed to present evidence of primary negligence by defendant or there are no material facts in dispute and reasonable minds could not reach differing conclusions).

that one party shall not be liable to the other for negligence." 198 Ariz. at 464 ¶ 8, 11 P.3d at 423. Similarly, in *Valley National Bank v. National Association for Stock Car Auto Racing, Inc. (NASCAR)*, this court held that releases for stock-car races were valid and not against public policy, although we reversed the summary judgment for the racetrack because a question of fact existed due to the execution of the release and the alleged lack of knowledge, 153 Ariz. 374, 377–79, 736 P.2d 1186, 1189–91 (App.1987), an issue not presented by this appeal.[6] Thus, absent questions of fact for the jury, this court has applied a standard contract-law analysis when construing exculpatory agreements, and upheld summary judgment when no material factual issue has existed as to the validity of the agreement or its applicability to the claims. *See Hadley v. Southwest Prop., Inc.*, 116 Ariz. 503, 506, 570 P.2d 190, 193 (1977)("The interpretation of the contract is a question of law for the court."); *accord Johnson v. NEW, Inc.*, 89 Wash.App. 309, 948 P.2d 877 (1997) (rejecting defense of assumption of risk in case of negligent adjustment of ski bindings, holding that express release agreements are governed by contract law, not tort principles).

### CONCLUSION

¶ 17 We affirm the summary judgment in favor of Firebird.

---

**6.** In *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 317 ¶ 9 n. 4, 965 P.2d 47, 51 n. 4 (App. 1998), and *Morganteen v. Cowboy Adventures, Inc.*, 190 Ariz. 463, 466 n. 5, 949 P.2d 552, 555 n. 5 (App.1997), we addressed express contractual assumptions without regard to Article 18, section 5. In *Bothell*, a girl and her parent signed a preprinted release relieving a stable from liability for injuries during any horse-related activity. 192 Ariz. at 315, 965 P.2d at 49. After the girl was injured, she and her parent brought suit, and the stable moved for summary judgment based on the release and an Arizona statute that limits liability for owners of horse facilities under certain·circumstances. *Id.* at 316, 965 P.2d at 50. Because we decided that neither the release nor the statute applied, we did not address the constitutional issue.

In *Morganteen*, a couple signed a waiver releasing a stable from liability for any potential injuries. 190 Ariz. at 464, 949 P.2d at 553. After receiving negligent instruction from the trail guide, the wife was injured and brought suit. The trial court granted summary judgment for the riding stable, ruling that the waiver

CONCURRING: PATRICK IRVINE, Presiding Judge and DAVID R. COLE, Judge Pro Tempore.[*]

---

barred the negligence suit. We reversed, finding that there was a question of fact whether the woman had understood the release. *Id.* at 467, 949 P.2d at 556.

Phelps also argues in his reply brief that, even if the constitutional provision does not bar summary judgment, there are factual disputes concerning whether he understood the release and waiver. He asserts that he thought that the documents' provisions applied to his negligence and not to that of Firebird. Although noted in his statement of facts, Phelps did not present this argument in his opening brief but exclusively relied on his constitutional argument. This court will not address an issue first raised in the reply. *Mason v. Cansino*, 195 Ariz. 465, 467 ¶ 7 n. 1, 990 P.2d 666, 668 (App.1999).

[*] The Honorable David R. Cole, a judge of the Maricopa County Superior Court, was authorized to participate as a Judge *Pro Tempore* of the Court of Appeals by order of the Chief Justice of the Arizona Supreme Court pursuant to Article 6, Section 31 of the Arizona Constitution and A.R.S. § 12–145 *et seq.* (2003).