SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| CHARLES PHELPS, an Arizona resident, | ) Arizona Supreme Court<br>) No. CV-04-0114-PR<br>) |
| Plaintiff-Appellant, | ) Court of Appeals<br>) Division One |
| v. | ) No. 1 CA-CV 03-0404<br>) |
| FIREBIRD RACEWAY, INC., an Arizona corporation aka and/or dba FIREBIRD INTERNATIONAL RACEWAY, a corporation, | ) Maricopa County<br>) Superior Court<br>) No. CV 2002-092570<br>)<br>) **O P I N I O N** |
| Defendant-Appellee. | )<br>) |

Appeal from the Maricopa County Superior Court
No. CV 2002-092570
The Honorable Bethany G. Hicks

**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division One
207 Ariz. 149, 83 P.3d 1090 (2004)

**VACATED**

_____

Skousen, Skousen, Gulbrandsen & Patience, P.C.                    Mesa
      By:  David L. Abney

And:

Law Offices of Hartley E. Newkirk                              Tucson
      By:  Hartley E. Newkirk
Attorneys for Plaintiff-Appellant
Charles Phelps

Jennings, Strouss & Salmon, P.L.C.                              Phoenix
    By:  Jay A. Fradkin
         John J. Egbert
Attorneys for Defendant-Appellee
Firebird Raceway

Osborn Maledon, P.A.                                            Phoenix
    By:  Thomas L. Hudson
         Taylor C. Young
And:

Piccarreta & Davis, P.C.                                        Tucson
    By: JoJene E. Mills
Attorneys for *Amicus Curiae*
Arizona Trial Lawyers Association

Law Offices of Charles M. Brewer, Ltd.                         Phoenix
    By:  Charles M. Brewer
         John B. Brewer
         Dane L. Wood
Attorneys for *Amicus Curiae*
The Law Firm of Charles M. Brewer, Ltd.

_____

**R Y A N**, Justice

¶1      This case requires us to determine whether Article 18, Section 5 of the Arizona Constitution, which provides that the defense "of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury," applies to an express contractual assumption of risk.  We hold that it does.

**I**

¶2      Charles Phelps was a professional racecar driver who had participated in more than 100 races at Firebird Raceway, Inc.  Before participating in a Firebird race, drivers must sign

a "Release and Covenant Not to Sue" ("Release") and a "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" ("Waiver"). Phelps signed both the Release and Waiver before taking part in a race. The Release contained the following provisions:

> **I HEREBY RELEASE, DISCHARGE AND ACQUIT** . . . Firebird . . . from any and all liability claims, actions, or demands, including but not limited to [a] claim for death, which I may hereafter have because of my injury, death, or damage while on the track, . . . or when participating in any race activities. . . .
>
> **I UNDERSTAND** that participating in drag racing contains **DANGER AND RISK** of injury or death, . . . but, nevertheless, **I VOLUNTARILY ELECT TO ACCEPT THE RISKS** connected with my entry into the restricted area and with racing.

The Waiver's relevant provisions stated:

> [T]he Undersigned . . . HEREBY RELEASES, WAIVES, DISCHARGES, AND COVENANTS NOT TO SUE [Firebird] . . . FOR ALL LOSS OR DAMAGE . . . ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY OR RESULTING IN DEATH OF THE UNDERSIGNED, WHETHER CAUSED BY THE NEGLIGENCE OF RELEASEES OR OTHERWISE, while the Undersigned is in or upon the RESTRICTED AREA, and/or competing . . . or for any purpose participating in such event. . . .
>
> EACH OF THE UNDERSIGNED expressly acknowledges that the ACTIVITIES OF THE EVENT ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED also expressly acknowledges the INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

¶3    During the race, Phelps lost control of his vehicle and crashed into a wall. Phelps' vehicle erupted into flames and he suffered severe burns. Phelps sued Firebird in superior

court, claiming that its employees were negligent in failing to rescue him more quickly from the burning vehicle and in failing to provide adequate emergency medical care. Firebird relied on the Release and Waiver in defending against Phelps' claims.

¶4 In response to Firebird's defense, Phelps filed a motion for partial summary judgment, arguing that Article 18, Section 5 of the Arizona Constitution requires that the issue of assumption of risk be decided by the jury. In a cross-motion for summary judgment, Firebird asserted that because the Release and Waiver were express contractual assumptions of risk, Article 18, Section 5 did not apply. The trial court denied Phelps' motion and granted Firebird's motion, and entered a judgment dismissing Phelps' claims.

¶5 Phelps appealed, contending that Article 18, Section 5 requires that all release and waiver agreements that purport to require the signer to assume the risk be treated as a question of fact for the jury.[1] The court of appeals concluded that "when the drafters of the Constitution discussed 'the defense of assumption of risk,' they were referring to an implied assumption of risk that had developed in the common law of torts

---

[1] Phelps did not raise any factual issues regarding the scope or his understanding of the Release and Waiver until he filed his reply brief. The court of appeals appropriately declined to consider this issue, which was raised for the first time in a reply brief. *Phelps v. Firebird Raceway, Inc.*, 207 Ariz. 149, 154 n.6, ¶ 16, 83 P.3d 1090, 1094 n.6 (App. 2004).

and that the courts had consistently used to bar suits by injured laborers." *Phelps v. Firebird Raceway, Inc.*, 207 Ariz. 149, 151-52, ¶ 10, 83 P.3d 1090, 1092-93 (App. 2004). The court affirmed the trial court's grant of summary judgment to Firebird because, "absent questions of fact for the jury, this court has applied a standard contract-law analysis when construing exculpatory agreements, and upheld summary judgment when no material factual issue has existed as to the validity of the agreement or its applicability to the claims." *Id.* at 153, ¶ 16, 83 P.3d at 1094.

¶6        Phelps petitioned for review, which we granted because the issue is one of first impression for this court and of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") § 12-120.24 (2003).

**II**

**A**

¶7        Preliminarily, we note that both parties agree that Firebird raised a defense of assumption of risk. The contract Phelps signed expressly confirmed that he had assumed the risk of any injuries resulting from Firebird's negligence. Indeed, the Waiver was labeled in part "Assumption of Risk," and the Release explicitly stated, "I voluntarily elect to *accept the*

*risks* connected with my entry into the restricted area and with racing." (Emphasis added.)

¶8        Moreover, Arizona case law and legal scholars have long viewed such contracts as a form of assumption of risk. *See, e.g., Hildebrand v. Minyard*, 16 Ariz. App. 583, 585, 494 P.2d 1328, 1330 (1972) ("Express assumption of risk is covered in Restatement (Second) of Torts s 496(B) (1965) which states: 'A plaintiff who *by contract* or otherwise expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy.'") (emphasis added)); 1 Dan B. Dobbs*, The Law of Torts* § 211, at 535 (2001) ("The essential idea [of the assumption of risk defense] was that the plaintiff assumed the risk whenever she *expressly agreed to by contract* or otherwise, and also when she impliedly did so by words or conduct.") (emphasis added).  We thus turn to the question whether Article 18, Section 5 applies to express contractual assumptions of risk.

**B**

¶9        Article 18, Section 5 provides as follows:

> The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury.

¶10     When a constitutional provision is unambiguous, it "is to be given its plain meaning and effect."  *U.S. West Communications, Inc. v. Ariz. Corp. Comm'n*, 201 Ariz. 242, 245, ¶ 10, 34 P.3d 351, 354 (2001).  "'Nothing is more firmly settled than under ordinary circumstances, where there is involved no ambiguity or absurdity, a statutory or constitutional provision requires no interpretation.'"  *Id.*  (quoting *Adams v. Bolin*, 74 Ariz. 269, 273, 247 P.2d 617, 620 (1952)); *see also Pinetop-Lakeside Sanitary Dist. v. Ferguson*, 129 Ariz. 300, 302, 630 P.2d 1032, 1034 (1981) ("[W]here a constitutional provision is clear, no judicial construction is required or proper.").  The Arizona Constitution, moreover, plainly mandates how unambiguous provisions are to be applied:  "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise."  Ariz. Const. art. 2, § 32; *see also U.S. West Communications,* 201 Ariz. at 245, ¶ 10, 34 P.3d at 354 (construing Article 2, Section 32).

¶11     Article 18, Section 5 unambiguously requires that the defense of assumption of risk be a question of fact for the jury "in all cases whatsoever" and "at all times."  Under the plain language of the provision, a jury must decide if the affirmative defense of assumption of risk, whether express or implied, precludes a plaintiff from recovering damages resulting from any negligence on the part of a defendant.

## C

¶12    Despite the clear language of Article 18, Section 5, Firebird contends that the assumption of risk defense in this case need not be submitted to a jury because its memorialization in writing somehow causes it to fall outside the ambit of the constitutional provision.  Firebird presents several arguments in support of its contention: the term "assumption of risk" is ambiguous; the framers did not intend Article 18, Section 5 to cover express assumptions of risk; Oklahoma's courts, in interpreting their identical constitutional provision, have permitted their courts to rule as a matter of law that the defense of assumption of risk precludes a plaintiff's recovery; an express assumption of risk is governed by contract principles while implied assumption of risk is governed by tort principles; and prior Arizona cases involving express assumptions of risk assumed that summary judgment could be entered if there were no factual disputes surrounding the signing of the contract assuming the risk.  We address each contention in turn.

## III

### A

¶13    Firebird first contends that because the doctrine of assumption of risk encompasses more than one category, the phrase "assumption of risk" as used in Article 18, Section 5 is

ambiguous. From this, it reasons that the framers must have intended Article 18, Section 5 to encompass only implied assumption of risk. We disagree.

¶14    Although the doctrine of assumption of risk "has been used by the courts in several different senses, which traditionally have been lumped together under the one name, often without realizing that any differences exist," W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser & Keeton on the Law of Torts* § 68, at 480 (5th ed. 1984) (hereafter "*Prosser & Keeton*"), express contractual assumption of risk has always been an important category of assumption of risk. *See, e.g.*, Melville M. Bigelow, *The Law of Torts* § 14, at 170 (8th ed. 1907) ("When does the servant assume the risk, so as to exempt the master from the duty in question?  The answer must be distributed under two heads:  first, in regard to risks assumed in the contract of service; second, in regard to risks otherwise assumed."); 3 Edward F. White, *A Supplement to the Commentaries on the Law of Negligence of Seymour Thompson* § 4608, at 670 (1914) ("The assumption of these risks rests on a contract between the parties, either express or implied from the circumstances of the employment and relieves the master from liability for the injuries thus sustained."); 2 Fowling V. Harper & Fleming James, Jr., *Torts* 1165, 1173 (1956) (including express assumption of risk in three categories of assumption of

risk); Robert E. Keeton, *Assumption of Risk in Products Liability Cases*, 22 La. L. Rev. 122, 124-29 (1961) (including express assumption of risk in six categories of assumption of risk); Restatement (Second) of Torts § 496(B) (1965) (explaining that express assumption of risk is a type of assumption of risk).

¶15    Firebird correctly notes that the defense of assumption of risk includes various different notions in addition to express contractual waiver.  But the fact that assumption of risk encompasses several different categories, or may take different forms, supports an expansive reading of Article 18, Section 5, not a restrictive one.  The framers' choice of the language in Article 18, Section 5, requiring that the defense shall be a fact question for the jury "in all cases whatsoever" and "at all times," confirms that they did not intend this section to apply only to some of the categories of the defense.  If the framers had intended in Article 18, Section 5 that "assumption of risk" did not include express contractual assumption of risk - a well-recognized form of assumption of risk – they would not have used such expansive language.  The framers' use of the broad language in Article 18, Section 5 demonstrates that they did not intend to distinguish implied assumption of risk from express assumption of risk in requiring juries to decide the enforceability of such a defense.

¶16      Agreeing with Firebird's argument, the court of appeals used a two-part analysis in interpreting Article 18, Section 5.  First, the court concluded that the framers generally intended Article 18, Section 5 to protect laborers from the defense of assumption of risk in lawsuits arising from workplace injuries and death.  *Phelps*, 207 Ariz. at 151, ¶ 9, 83 P.3d at 1092.  The court reasoned that because Article 18 generally focused on labor issues, "when the drafters of the Constitution discussed 'the defense of assumption of risk' [in Article 18, Section 5], they were referring to an implied assumption of risk that had developed in the common law of torts and that the courts had consistently used to bar suits by injured laborers."  *Id*. at 151-52, ¶ 10, 83 P.3d at 1092-93.  Second, the court noted that the drafters addressed "express contractual assumption of risk" in Article 18, Section 3,[2] which

---

[2]      Article 18, Section 3 provides as follows:

It shall be unlawful for any person, company, association, or corporation to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company, association, or corporation shall be released or discharged from liability of [sic, or] responsibility on account of personal injuries which may be received by such servants or employees which [sic, while] in the service or employment of such person, company, association, or corporation, by reason of the negligence of such person, company, association, corporation, or the agents or employees

- 11 -

declares "null and void" prospective contractual waivers of employer liability for personal injuries suffered by employees in the course of employment. *Id.* at 152, ¶ 10, 83 P.3d at 1093. The court thus concluded that "assumption of risk," as that term is used in Article 18, Section 5, does not encompass "express contractual assumption of risk," notwithstanding the accompanying language "in all cases whatsoever" and "at all times." *See id*.

¶17     The court of appeals' suggestion that the "legislative history" of Article 18, Section 5 supports its conclusion that the provision does not apply to "express contractual assumption of risk" is not appropriate because the constitutional provision is facially clear and unambiguous. *See Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 12, 730 P.2d 186, 189 (1986) ("We interpret constitutional provisions by examining the text and, *where necessary*, history in an attempt to determine the framers' intent.") (emphasis added). But even if this "legislative history" is considered, the opinion below is flawed in its analysis in several respects.

¶18     First, the court of appeals erroneously concluded that Article 18, Section 5 must be interpreted in light of the master-servant relationship as it existed at the time of the

---

thereof; and any such contract or agreement if made, shall be null and void.

constitutional convention because Article 18 predominantly deals with labor.  It is true that Article 18 generally was "designed to protect the rights of the laboring class . . . ." *Kilpatrick v. Superior Court*, 105 Ariz. 413, 416, 466 P.2d 18, 21 (1970).  However, we have long held that Article 18, Section 5 is not restricted to employment cases.  For example, just eleven years after the constitutional convention, in addressing whether Article 18, Section 5 applied outside of the employment context, this Court held that

> [t]he contention of the defendant that, because the provision is found in the article of the Constitution entitled 'Labor,' it must be limited in its scope and application to the relation of master and servant, cannot be sustained.  The language is too broad and comprehensive to admit of such a narrow construction.

*Davis v. Boggs*, 22 Ariz. 497, 507, 199 P. 116, 120 (1921), *overruled on other grounds by S. Pac. Co. v. Shults*, 37 Ariz. 142, 145, 290 P. 152, 153 (1930).

¶19     The *Davis* opinion was authored by Albert C. Baker, a delegate to the convention.  Baker, in fact, seconded the motion to adopt, verbatim, a broadly worded provision of the Oklahoma Constitution, Article 23, Section 6.  *The Records of the Arizona Constitutional Convention of 1910* 881-84 (John S. Goff ed., 1991) (hereinafter "Goff").  The Arizona framers adopted that provision as Article 18, Section 5.  *Id.* at 884.  By

successfully persuading a majority of the delegates to adopt the language of Oklahoma's provision, which was not limited in scope, Baker and the other proponents of the provision "surely knew what they were doing" with respect to Article 18, Section 5:  the provision would not be limited to the context of employment.  Noel Fidel, *Preeminently a Political Institution: The Right of Arizona Juries to Nullify the Law of Contributory Negligence*, 23 Ariz. St. L.J. 1, 14-18 (1991).  Thus, one of the more influential delegates to the Constitutional Convention reaffirmed in *Davis* what he surely knew: that the majority of delegates intended that Article 18, Section 5 was not limited to employment circumstances.

**¶20**      *Davis* has not been questioned in the intervening 84 years.  *See, e.g., Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 288, ¶ 18, 9 P.3d 314, 319 (2000) (applying Article 18, Section 5 to a medical malpractice case); *Schwab v. Matley*, 164 Ariz. 421, 423-24, 793 P.2d 1088, 1090-91 (1990) (applying Article 18, Section 5 in suit for defendant's negligent furnishing of alcohol to man who subsequently shot plaintiff in defendant's parking lot); *Brannigan v. Raybuck*, 136 Ariz. 513, 518, 667 P.2d 213, 218 (1983) (applying Article 18, Section 5 to a case in which the parents of three underage boys

who died in a one-car accident filed wrongful death actions against the establishment that provided the boys with alcohol).[3]

¶21     Second, each section in Article 18, other than Sections 5 and 6, explicitly applies only in the labor or employment context.  Therefore, the fact that the framers left out any mention of labor or employment from Article 18, Sections 5 and 6, indicates that they did not similarly intend to restrict those sections to those contexts.

¶22     Given this background, we simply cannot agree with the assertion that the history of Article 18, Section 5 suggests that the framers intended to limit the application of the section to the employer-employee context and that the provision must be interpreted within that context.

¶23     Third, the court of appeals erred in its reliance on Article 18, Section 3.  The court reasoned that because Article

---

[3]     We have likewise repeatedly refused to limit to employment cases Article 18, Section 6, which provides that "[t]he right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."  *See Duncan v. Scottsdale Med. Imaging Ltd.*, 205 Ariz. 306, 308, ¶ 1, 70 P.3d 435, 437 (2003) (holding that Article 18, Section 6 invalidated section 12-562(B) of Arizona's Medical Malpractice Act, A.R.S. §§ 12-561 to -594 (2003)); *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 342-44, 861 P.2d 625, 627-29 (1993) (applying Article 18, Section 6 to product liability claim); *Boswell*, 152 Ariz. at 12-20, 730 P.2d at 189-97 (1986) (applying Article 18, Section 6 to invalidate a statute limiting damages for certain defamation claims); *Barrio v. San Manuel Div. Hosp. for Magma Copper Co.*, 143 Ariz. 101, 104-07, 692 P.2d 280, 283-86 (1984) (applying Article 18, Section 6 to a medical malpractice claim); *Kenyon v. Hammer*, 142 Ariz. 69, 81-83, 688 P.2d 961, 973-75 (1984) (same).

- 15 -

18, Section 3 proscribed express contractual assumptions of risk in the employment context, "assumption of risk" in Article 18, Section 5 could not encompass express assumptions of risk. *See Phelps*, 207 Ariz. at 151-52, ¶¶ 9-10, 83 P.3d at 1092-93. However, in light of the settled law establishing that the framers did not restrict Article 18, Section 5 to the employment context, the two provisions are not, as the court of appeals suggests, reconcilable only by concluding that express contractual assumptions of risk are necessarily precluded from "assumption of risk" in Article 18, Section 5. Rather, as a textual matter, Article 18, Section 3 merely makes all express contractual assumptions of risk between employers and employees invalid *ab initio*, whereas Article 18, Section 5 refers all other assumption of risk defenses, whether express or implied, to the jury. Thus, Section 5 provides that assumption of risk is a question of fact for a jury to decide. Section 3, in contrast, provides that, in the employment context, the defense of an express contractual assumption of risk is unavailable. Because this case does not involve the Section 3 exception – contractual waiver in an employment contract – it falls within the general rule of Section 5.

C

¶24      Firebird, as did the court of appeals, also relies on Oklahoma case law for the assertion that Article 18, Section 5

- 16 -

permits a court to grant summary judgment in instances of express assumption of risk. That reliance, however, fails for three reasons. First, the Oklahoma Supreme Court has *not* held that Oklahoma's identical provision applies only to implied assumption of risk. Instead, it held that the provision covers both express and implied assumption of risk. *See Schmidt v. United States*, 912 P.2d 871, 875 n.24 (Okla. 1996) ("Promise-based obligations of the type dealt with here are treated as the promisor's risk assumption."). The Oklahoma Supreme Court merely held that assumption of risk, whether express or implied, will entitle a defendant to summary judgment or a directed verdict when there are no material fact issues or when a plaintiff's assumption of risk abolishes the defendant's duty to the plaintiff. *See id.* (distinguishing between disputed questions of law and disputed questions of fact for purposes of Article 23, Section 6 of the Oklahoma Constitution); *see also Reddell v. Johnson*, 942 P.2d 200, 204-05, ¶ 20 (Okla. 1997) (affirming summary judgment for defendant, notwithstanding Article 23, Section 6, on basis of assumption of risk; defendant owed plaintiff no duty because plaintiff voluntarily participated in a BB gun "war" and knew of the inherent risks involved).

¶25 Second, Arizona courts have interpreted Arizona's constitutional provision quite differently than Oklahoma courts

have interpreted Oklahoma's provision. When Arizona adopted the same provision Oklahoma had adopted, Oklahoma courts had not yet interpreted it. When they did, they agreed with our interpretation for a number of years. *See, e.g., Pioneer Hardwood Co. v. Thompson*, 153 P. 137, 138 (Okla. 1915) (Article 23, Section 6 provides "that in this jurisdiction contributory negligence is no longer to be drawn by the court as a conclusion of law from the facts found, but is in all cases a conclusion of fact to be drawn by the jury. . . . [I]t is the duty of the court to . . . leave to the jury the right to draw the ultimate conclusion from the facts if found whether or not contributory negligence exists as a matter of fact."); *Dickinson v. Cole*, 177 P. 570, 570 (Okla. 1918) ("Were it not for article 23, § 6, of the state Constitution . . . it would be necessary to hold as a matter of law that the negligence of plaintiff precludes a recovery."), *aff'd sub nom. Chicago, R.I. & P.R. Co. v. Cole*, 251 U.S. 54 (1919).

¶26    Not until 1972 did Oklahoma retreat from its longstanding position that its provision required juries, not judges, to decide whether contributory negligence or assumption of risk precluded recovery. *See Smith v. Chicago R.I. & P.R. Co.*, 498 P.2d 402, 405 (Okla. 1972) (holding that instead of following our requirement in *Layton v. Rocha*, 90 Ariz. 369, 371, 368 P.2d 444, 445 (1962), that the words "should" or "may" be

used in instructing the jury on contributory negligence, Oklahoma juries should be instructed that they "should" or "must" decide in the defendant's favor if they find contributory negligence).

¶27     After *Smith* and years of subsequent judicial decisions, Oklahoma's provision today stands only as a reiteration of the general rule that judges decide questions of law and juries decide questions of fact.  In contrast, this Court has repeatedly refused to impose judicially crafted restrictions on Article 18, Section 5.  *See Heimke v. Munoz*, 106 Ariz. 26, 28, 470 P.2d 107, 109 (1970) ("This Court by a long line of decisions under a variety of circumstances has held that the purpose of Article 18, § 5 was to modify the common law by making the jury rather than the court the sole arbiter of the existence or non-existence of contributory negligence.  This includes not alone the right to determine the facts, but to *apply or not, as the jury sees fit*, the law of contributory negligence as a defense.") (citations omitted) (emphasis added), *overruled on other grounds by Jurek v. Jurek*, 124 Ariz. 596, 606 P.2d 812 (1980); *see also Estate of Reinen*, 198 Ariz. at 288, ¶ 18, 9 P.3d at 319 ("A jury 'is free to find in favor of the plaintiff even though the court ordinarily would find as a matter of law that the plaintiff . . . has assumed the risk.'") (2000) (quoting *Brannigan*, 136 Ariz. at 518, 667 P.2d at 218);

*Schwab*, 164 Ariz. at 424, 793 P.2d at 1091 (holding that under Article 18, Section 5, "the jury, and only the jury, is given the duty and privilege to determine whether the facts establish contributory negligence and whether, if they do, the defense should be applied").

¶28     Third, although generally we will look to the decisions of other states in interpreting a constitutional provision adopted from another state's constitution, those decisions are only persuasive authority. *See Kotterman v. Killian*, 193 Ariz. 273, 291, ¶ 68, 972 P.2d 606, 624 (1999). Such decisions, moreover, are considerably less persuasive when they are issued *after* Arizona adopted the provision and particularly when, as here, the two states have taken divergent paths in interpreting their constitutional provisions. Given these vast differences in Arizona's and Oklahoma's interpretations, we do not consider Oklahoma's case law persuasive in interpreting Article 18, Section 5.

**D**

¶29     Firebird's and the court of appeals' conclusion that implied assumption of risk applies in the tort context while express assumption of risk applies only in the contract context, *see Phelps*, 207 Ariz. at 151, ¶ 7, 83 P.3d at 1092, misstates the law. "After long ago arriving in the torts arena as a refugee from contract law," *Murray v. Ramada Inns, Inc.*, 521 So.

2d 1123, 1130 (La. 1988), assumption of risk, whether express or implied, is a defense to *tort* claims. *See, e.g.*, Restatement (Second) of Torts § 496(B) (explaining that express assumption of risk is a type of assumption of risk); *Prosser & Keeton*, *supra* ¶ 14, § 68, at 480 ("In its most basic sense, assumption of risk means that the plaintiff, in advance, has given his *express* consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.").

¶30     This case provides a clear example of how such a defense works.  Phelps brought a tort claim against Firebird, and Firebird raised a contractual affirmative *defense*.  That affirmative defense, however, did not transform Phelps' tort claim into a contract action.  Rather, Phelps' claim remained, at all times, a tort claim.  Thus, this case is not, as the court of appeals suggested, about extending Article 18, Section 5 to contract actions.

¶31     Instead, we merely reaffirm today that Article 18, Section 5 means what it says: the validity of an express contractual assumption of risk is a question of fact for a jury, not a judge.  At trial, Firebird is entitled to have the jury instructed both as to the enforceability of contracts and as to

the substance of the statute governing race track liability,[4] as long as it is clear that the ultimate decision as to the enforceability of the Release and Waiver signed by Phelps is for the jury.

**E**

¶32    Firebird argues, and the court of appeals concluded, that summary judgment as to the enforcement of contractual waivers of liability is proper because that court has previously affirmed such judgments. *See Phelps*, 207 Ariz. at 152-53, ¶ 16, 83 P.3d at 1093-94 (citing *Benjamin v. Gear Roller Hockey Equip., Inc.*, 198 Ariz. 462, 464, ¶ 8, 11 P.3d 421, 423 (App. 2000) (affirming summary judgment for defendant and stating that "[a]bsent any public policy to the contrary, Arizona allows parties to agree in advance that one party shall not be liable to the other for negligence")). But the plaintiff in *Benjamin* failed to argue the applicability of Article 18, Section 5.[5]

---

[4]    Owners of a "closed-course motor sport facility" are afforded limited liability under A.R.S. § 12-556 (1999) if "a motor sport liability release" is required to be signed by any participant or attendee who seeks admission into any nongeneral spectator area of the facility.

[5]    Other appellate cases have also suggested that courts may grant summary judgment to defendants when they assert an assumption of risk defense. *See Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 298, 890 P.2d 69, 73 (App. 1994); *Sirek v. Fairfield Snowbowl, Inc.*, 166 Ariz. 183, 185, 800 P.2d 1291, 1293 (App. 1990); *see also Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 384, 694 P.2d 198, 214 (1985) (suggesting that summary

Phelps' constitutional argument cannot fail simply because prior litigants did not assert their constitutional rights or because our courts did not address them.

**IV**

¶33    We find it necessary to respond at least briefly to the dissent.   The dissent first argues that the language of Proposition 88 and Proposition 50 rejected by the framers of Arizona's constitution suggests that they intended a nuanced reading of Article 18, Section 5.   *See infra* ¶¶ 52-56.   We disagree.   We note initially that the framers did not adopt Propositions 50 and 88.   Moreover, the "legislative history" does not indicate that the framers considered express assumption of risk to be outside the ambit of assumption of risk.   Sections

---

judgment was inappropriate because there was a genuine fact question concerning whether the limitation of liability was actually bargained for).    None of those cases, however, addressed the applicability of Article 18, Section 5.

Other opinions have considered contractual waivers but have expressly declined to consider whether Article 18, Section 5 applied. *See Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 316-17, ¶ 9 & n.4, 965 P.2d 47, 50-51 & n.4 (App. 1998) (declining to address the applicability of Article 18, Section 5 because of a factual dispute that already precluded judgment for defendants as a matter of law); *Morganteen v. Cowboy Adventures, Inc.*, 190 Ariz. 463, 466 & n.5, 949 P.2d 552, 555 & n.5 (App. 1997) (holding that factual issues precluded summary judgment for defendant but expressly stating that it would not consider whether Article 18, Section 5 applied because the plaintiffs had not argued it).

2 and 3 of Proposition 88[6] did seem to make that distinction, but Proposition 88 was defeated in a 26 to 21 vote by those who supported what became Article 18, Section 5. *See* Goff at 881-84. In fact, Delegate Baker opposed Proposition 88 and supported Article 18, Section 5, calling Proposition 88 "absolutely contradictory in its own terms and unfair." *Id.* at 882. Consequently, we are not persuaded by the dissent's argument that the faction that opposed Proposition 88 and eventually adopted entirely different language nonetheless intended to adopt Proposition 88's proposed distinction between express and implied assumption of risk.

¶**34** The rejected language of Proposition 50[7] likewise does not suggest that the framers drew a distinction between express and implied assumption of risk. It is true that Proposition 50, at one point, would have made *all* contractual waivers void. *See infra* ¶ 56. It is also true that if the framers had adopted that language, we would not be having this debate. *See infra* ¶ 57. But the dissent's speculation as to why the framers

---

[6]   Section 2 of Proposition 88 would have abolished the defense of assumption of risk, and section 3 would have invalidated any contractual waiver of a right to recover damages. Goff at 1228.

[7]   Proposition 50 proposed two things: it precluded the enactment of any law that would limit the amount of damages an injured person could recover, and it declared that "[a]ny contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void." Goff at 1147.

rejected making all contractual waivers void is unwarranted and unhelpful in resolving the question now before us. In light of the provisions that the framers actually adopted, the rejected portion of Proposition 50 merely demonstrates that although the framers considered whether to make all contractual waivers void, they decided not to take such drastic measures. Instead, as a textual matter, they concluded that only contractual waivers in the employment context would be void, and the enforceability of all other types of assumption of risk would be decided by a jury.

¶35    In any event, in light of the clear language of Article 18, Section 5 – that assumption of risk shall be a question of fact for the jury "in all cases whatsoever" and "at all times" – we should not look to what, at best, can be characterized as ambiguous "legislative history" to limit an otherwise unambiguous constitutional provision. *See Adams*, 74 Ariz. at 273, 247 P.2d at 620; *cf. United States v. Taylor*, 487 U.S. 326, 345 (1988) (Scalia, J., concurring in part) (criticizing "the view that legislative history *can* alter the meaning of even a clear statutory provision").

¶36    The dissent next argues that "[d]elegates to the Arizona constitutional convention were clearly concerned that any attempt to extend too broadly the prohibition against express contractual liability waivers would violate *Lochner* [*v.*

*New York*, 198 U.S. 45 (1905)]." *See infra* ¶ 60. *Lochner* overturned a statute because it "necessarily interfer[ed] with the right of contract between the employer and employees, concerning the number of hours in which the latter may labor in the bakery of the employer." 198 U.S. at 53. The Court concluded that the general right to contract in relation to a person's business was "part of the liberty of the individual protected by the 14th Amendment of the Federal Constitution." *Id.*

¶37 The dissent argues that statements made by three delegates during the convention prove that the framers were "clearly concerned" that an overly broad prohibition of express contractual waivers would violate *Lochner*. As the dissent points out, Delegate Baker said the following about Proposition 50: "I confess on the spur of the moment that I am in doubt as to whether you can limit all contracts or not." Goff at 152. Delegate Jones, moreover, later raised a similar concern with respect to Proposition 50, questioning whether the provision "would be nullified anyway." *Id.* at 548. Delegate Cunningham responded that "[i]f we here intend to write in this constitution that a man who is injured cannot have the right to contract, then we are taking from him one of his constitutional rights – that of equal protection of the law." *Id.* However, two delegates expressly disagreed with Delegate Cunningham

during the debate,[8] and Cunningham's faction lost the vote on the issue.  *See id.* at 548.[9]

**¶38**     We disagree that the three statements cited by the dissent prove that the framers were concerned that an overly broad prohibition of express contractual waivers would violate

---

[8]     Delegate Crutchfield said the following:

> Upon the question of striking out the last two lines[, which made all contractual waivers void,] as recommended by the majority report, I wish to say there are certainly conditions under which this waiver of the right to recover damages would be manifest, unjust, and should be declared void.  Some companies are accustomed to provide an agreement that is really a prerequisite to employment, and if the employee[s] sign the contract waiving all right and claim to damages in the case of death or injury above a certain amount which they specify and provide for, and all these circumstances with many others seem to me to make it necessary to retain the second part of the proposition.  I feel it would be a distinct loss, and I am therefore opposed to the majority report, and trust the proposition will stand adopted without amendment.

Goff at 547–48.

> Delegate Bolan argued that

> [Mr. Cunningham] is perfectly right in certain cases, but under certain conditions there has been injustice practiced upon people who have been injured; especially in railroad accidents.  I know that many who are injured on railroads receive a small compensation when they should have received larger compensation if they received their just dues.

*Id.* at 548.

[9]     As we discuss below, however, the final version of Proposition 50 did not include the disputed sentence. *See infra* n.10, ¶ 38.

- 27 -

*Lochner*.  First, although the statements do suggest that at least some delegates were concerned with *Lochner*, the position of those delegates was defeated when the convention voted on the issue.  Second, the adoption of Article 18, Section 3 makes it difficult to conclude that the majority of framers were concerned about violating *Lochner*.  *Lochner*, after all, protected the freedom of contract with respect to *employment*. And Article 18, Section 3 makes *all* contractual waivers in the employment context void.[10]  We cannot conclude from the "legislative history," therefore, that the framers of the Arizona Constitution were concerned that a prohibition of express contractual waivers would violate *Lochner*.

---

[10]  As discussed above, the final version of Proposition 50 omitted the disputed sentence that would have made all contractual waivers void.  As the dissent concedes, however, it is unclear why the framers did not include that sentence in Proposition 50.  *See infra* ¶ 61.  However, the fact that Article 18, Section 3 made all contractual waivers void in the employment context may provide some insight.  Delegate Crutchfield clearly opposed omitting the disputed sentence of Proposition 50 because he wanted to remove from employers the ability to use contractual waivers to escape liability.  *See* Goff at 547-48.  It is possible that the framers shared Delegate Crutchfield's concerns and, therefore, did not believe it necessary to make *all* contractual waivers void when Article 18, Section 3 made all contractual waivers *in the employment context* void.  The truth is, however, that the "legislative history" does not provide conclusive proof, one way or another, why the framers did what they did.  Rather, the best proof of "legislative intent" here is the text of the constitution itself.

## V

¶39     In the end we return to where we began – the plain language of Article 18, Section 5.  The clear, broad language of that provision compels the result we reach.  The Arizona Constitution provides that assumption of risk is a question of fact for the jury "in all cases whatsoever" and "at all times."  The decision below effectively amended the constitution to provide that assumption of risk is a question of fact for the jury only "in some cases" and "at some times."  As judges, we are not free to rewrite our fundamental document in this fashion.  *See Nixon v. Mo. Mun. League*, 541 U.S. 125, 141 (2004) (Scalia, J., concurring in judgment) ("avoidance of unhappy consequences" is an inadequate basis for interpreting a text).

¶40     Although in today's world Article 18, Section 5 may seem impractical or a questionable policy choice, the framers of our constitution thought otherwise.  It is not our role to determine public policy.   The framers of our constitution and the Arizona voters who ratified it mandated that the defense of assumption of risk shall, at all times, be left to the jury.  We are bound to follow that mandate.

¶41     We do not anticipate that this opinion will subject a whole new cadre of cases to jury consideration.   Arizona opinions already reflect that there will almost always be factual questions about the scope of an express contractual

assumption of risk or whether a plaintiff understood its terms. *See, e.g.*, *Salt River Project Agric. Improvement & Power Dist.*, 143 Ariz. at 384-85, 694 P.2d at 214-15 (finding fact question between sophisticated commercial parties concerning whether the plaintiff bargained for the limitation on liability); *Bothell*, 192 Ariz. at 317-18, ¶ 12-14, 965 P.2d at 51-52 (finding that factual disputes concerning the scope of the release precluded judgment for defendants as a matter of law); *Morganteen*, 190 Ariz. at 466, 949 P.2d at 555 (holding that factual issues concerning the scope of the release precluded summary judgment for defendant); *Maurer*, 181 Ariz. at 298, 890 P.2d at 73 (holding that summary judgment for defendant was inappropriate because the release was insufficiently specific to alert plaintiff of the dangers she faced); *Sirek*, 166 Ariz. at 187-88, 800 P.2d at 1295-96 (precluding summary judgment because release did not explicitly release defendant from its own negligence). Thus, the impact of Article 18, Section 5's requirement that juries decide the enforceability of all forms of assumption of risk may be largely academic because, as the above cases demonstrate, in many if not most cases, factual issues surrounding the signer's understanding of an express contractual assumption of risk already require determination by a jury.

¶42        Finally, as evidenced by *Valley National Bank v. National Ass'n for Stock Car Auto Racing, Inc. (NASCAR)*, 153

- 30 -

Ariz. 374, 736 P.2d 1186 (App. 1987), we are confident that adequately instructed juries will reach appropriate results when confronted with assumption of risk defenses. In that case, the plaintiffs, spectators at a NASCAR event, signed a release of liability similar to the one in this case. *Id.* at 376, 736 P.2d at 1188. The plaintiffs were subsequently injured and sued NASCAR. The case was submitted to the jury, which found for NASCAR either because it found that NASCAR had not been negligent or because it found that the defense of assumption of risk barred recovery. *Id.* at 377, 736 P.2d at 1189.[11] Thus, as *NASCAR* suggests, juries will consider express contractual assumptions of risk in a rational manner, as the framers of our constitution clearly contemplated when they approved Article 18, Section 5.

## VI

¶43    For the foregoing reasons, we vacate the opinion of the court of appeals, reverse the trial court's grant of summary judgment, and remand this case to the trial court for further proceedings consistent with this opinion. We further

---

[11]    The court acknowledged that the general verdict made it difficult to know the basis for the jury's decision. *NASCAR*, 153 Ariz. at 377, 736 P.2d at 1189. Nevertheless, the case does demonstrate that submitting the issue of the enforceability of an express contractual assumption of the risk to the jury will not automatically result in plaintiffs' verdicts.

deny Phelps' request for an award of attorney fees under the private attorney general doctrine.

_____
Michael D. Ryan, Justice

CONCURRING:

_____
Rebecca White Berch, Justice

_____
Andrew D. Hurwitz, Justice

M c G R E G O R, Vice Chief Justice, dissenting:

¶44        I respectfully dissent.  The issue in this case is whether, when the Framers drafted the Arizona Constitution, they intended that the term "assumption of risk," as used in Article 18, Section 5, would encompass express contractual waivers of liability.  Unlike the majority, I do not regard the language of Article 18, Section 5 as clear and unambiguous.  Moreover, after considering both the language of and the history surrounding the adoption of this constitutional provision, I would hold that the better-reasoned conclusion is that "assumption of risk," as used in the constitution, refers only to implied assumption of risk and not to express contractual waivers of liability.  Hence, unlike the majority, I would conclude that a court can consider

whether, as a matter of law, an express contractual waiver can be enforced.

I.

¶45    My disagreement with the majority opinion begins with its conclusion that the phrase "assumption of risk" is clear and unambiguous.  Op. ¶¶ 11, 35, 39.  To be sure, the majority correctly characterizes the phrases "in all cases whatsoever" and "at all times" as clear and broad language.  But "assumption of risk" is a legal term of art that describes a legal theory that has evolved over the years.

¶46    Assumption of the risk entered the legal lexicon as a term of art describing one of the "unholy trinity" of defenses—along with contributory negligence and the fellow servant rule—developed in the late nineteenth century to protect employers against employee tort claims for injuries incurred on the job. *See Hough v. Tex. & Pac. Ry. Co.*, 100 U.S. 213 (1879).  During its nascency, the doctrine of assumption of risk was based on analogies to contract theory and limited solely to the master-servant context.  G. Edward White, *Tort Law in America: An Intellectual History* 42 (2003) (The doctrine of assumption of risk "originated in the 'status' context of servants' relations with their masters.").

¶47    By the time of the drafting of the Arizona Constitution, the defense of assumption of the risk had

- 33 -

developed into an amorphous concept defined in a variety of ways by commentators and courts. Some legal scholars argued that the contract analogies that once undergirded the doctrine of assumption of the risk could not adequately support the increasingly broad applications of the defense. *See, e.g.,* Francis Wharton, *A Treatise on the Law of Negligence*, § 200, at 178-80 & n.1 (Philadelphia, Kay & Brother, 2d ed. 1878) (pointing out that not all servants were competent to contract and that many jurisdictions had found contractual waivers of liability to be invalid as against public policy). These commentators argued that assumption of the risk is more properly grounded in tort principles, rather than in the legal fiction of implied contracts. During this same period, other commentators explored the possibility of expanding the doctrine beyond the employer-employee relationship. *See, e.g.*, Charles Warren, *Volenti Non Fit Injuria in Actions of Negligence*, 8 Harv. L. Rev. 457, 459 (1895) (asserting the rule that "[o]ne who knows of a danger arising from the act or omission of another, and understands the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure"). These scholars argued that assumption of the risk was a potential defense to any tort claim, whether or not a master-servant relationship existed between the parties.

¶48     Courts in various jurisdictions also struggled during this period to determine the contours of the doctrine of assumption of the risk. *See, e.g.*, *Welsh v. Barber Asphalt Paving Co.*, 167 F. 465, 470-71 (9th Cir. 1909) (recognizing a split in authority regarding whether assumption of the risk sounds in contract or in the tort concept of *volenti non fit injuria*); *Valjago v. Carnegie Steel Co.*, 75 A. 728, 729 (Pa. 1910) (same).  The Supreme Court recognized the confusion surrounding the doctrine of assumption of the risk during that period in *Schlemmer v. Buffalo, Rochester & Pittsburg Ry. Co.*, 205 U.S. 1 (1907).  There, Justice Holmes, writing for the Court, questioned the "rather shadowy" connection between "the notion of contract" and a broad concept of assumption of risk and noted that assumption of risk "shades into negligence as commonly understood." *Id.* at 12.  In fact, the similarities between assumption of risk and contributory negligence were so great that some courts "treated assumption of risk and negligence as convertible terms." *Id.* at 13 (citing *Patterson v. Pittsburg & Connellsville R.R. Co.*, 76 Pa. 389 (1874)).

¶49     Justice Frankfurter captured well the confusion surrounding the phrase:

> The phrase "assumption of risk" is an excellent illustration of the extent to which uncritical use of words bedevils the law.  A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a

> legal formula, undiscriminatingly used to express
> different and sometimes contradictory ideas.

*Tiller v. Atl. Coast Line R.R. Co.*, 318 U.S. 54, 68 (1943)

(Frankfurter, J., concurring).

¶50    I simply cannot regard a phrase that carries "different and sometimes contradictory" meanings as unambiguous. The question is not whether Article 18, Section 5 *can* be interpreted as applying to both implied assumption of the risk and express contractual waiver of liability; one can, of course, adopt that interpretation.  The question is whether the Framers *intended* that Article 18, Section 5 extend to express contractual waivers.  I find quite compelling the evidence that the drafters of the constitution intended to limit the phrase to implied assumptions of risk.

## II.

¶51    When a phrase is ambiguous, fundamental principles of constitutional construction require us to look to extrinsic evidence to determine its intended effect.  *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994).  Specifically, we consider the "history behind the provision, the purpose sought to be accomplished [by its enactment], and the evil sought to be remedied."  *Id.*

¶52    The proposals and comments of the Framers during Arizona's constitutional convention provide the most persuasive

evidence of their intent in adopting Article 18, Section 5.  The majority of these progressive, labor-friendly individuals found the doctrine of assumption of the risk highly objectionable. *See generally*, Roger C. Henderson, *Tort Reform, Separation of Powers, and the Arizona Constitutional Convention of 1910*, 35 Ariz. L. Rev. 535 (1993) (detailing the party platforms and political makeup of Arizona's constitutional convention); Noel Fidel, *Preeminently a Political Institution: The Right of Arizona Juries to Nullify the Law of Contributory Negligence*, 23 Ariz. St. L.J. 1, 9-12 (1991).  By the time Arizona convened its constitutional convention, courts across the nation had liberally applied the doctrine of assumption of the risk in ways that thwarted efforts by injured employees to recover on tort claims against employers.  In an effort to protect Arizona laborers, the Framers included a number of tort-related sections in the Arizona Constitution.  In fact, "of the 153 propositions introduced at the constitutional convention, there were nine that in some measure would affect the law of torts."  Henderson *supra*, at 576.  The progression of two of these propositions from introduction to engrossment is particularly helpful in determining the Framers' understanding of "assumption of risk."

¶53      Proposition 88 ultimately became Article 18, Section 5. As introduced, Proposition 88 read in pertinent part:[12]

> Section 2. No law shall be enacted and no rule of law shall be recognized in the State of Arizona whereby the defense of "fellow servant" or the defense of "assumption of risk" shall be recognized in actions to recover damages in cases of injury or death covered in the first section of this article;
> . . .
> Section 3. No waiver by contract of right to recover damages under this Article shall be valid.

*The Records of the Arizona Constitutional Convention of 1910* at 1228 (John S. Goff ed.) (hereinafter Goff).

¶54      The first lesson to be learned from this original version devolves from the fact that it clearly distinguishes between the common law doctrine of assumption of risk (eliminated by section 2) and express contractual waivers (prohibited by section 3). If the Framers had considered express contractual waivers to be included in the common law doctrine of "assumption of risk," they would have had no need to propose section 3; section 2 would have prevented enforcement of such contracts. The fact that section 3 was included in proposition 88 indicates that the Framers viewed express

---

[12] Proposition 88 also included a provision requiring the establishment of an employer's liability law and a provision prohibiting the legislature from limiting damages for tort claims. *The Records of the Arizona Constitutional Convention of 1910* at 1227-28 (John S. Goff ed.). These provisions ultimately became Sections 6 and 7 of Article 18. *Id.* at 1373.

- 38 -

contractual waivers as distinct from common law assumption of risk.

¶55    Proposition 88 did not ultimately pass in its original form. An amendment struck section 2, and replaced it with the language of Article 23, Section 6 of the Oklahoma Constitution, providing that "[t]he defense of contributory negligence or of assumption of the risk shall in all cases whatsoever be a question of fact, and shall at all times be left to the jury." Goff, *supra*, at 883-84. This version of section 2 ultimately became engrossed in the constitution as Article 18, Section 5. The Framers dropped section 3 because it appeared redundant of the language found in two other Propositions, 47 and 50. *Id*. at 542, 548.

¶56    The original version of Proposition 50, which directly addressed the right of employers to require employees to waive a right to recover damages for employment-related injuries, read in pertinent part:

> [N]o law shall be enacted in this State limiting the amount of damages to be recovered for causing the death or injury of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void.

Goff, *supra*, at 1147. When the Committee of the Whole took up discussion of Proposition 50, some delegates suggested that the specific protection from express contractual waivers of

- 39 -

liability should be afforded to everyone, rather than limited to employees. *Id.* at 152. In fact, Delegate Baker specifically argued that this provision should be broadened to prevent railroad companies from extracting express liability waivers from passengers. *Id.* The Committee of the Whole agreed and ultimately adopted an amended version of Proposition 50, striking the reference to employees.

¶57        Had Proposition 50 in this amended form been engrossed in the Arizona Constitution, we would not currently be deciding whether questions involving express contractual waivers must go to a jury; the waivers would be null and void under the constitution. Curiously, however, this amended version of Proposition 50 did not become part of the text of the Arizona Constitution. Instead, during the final reading of the newly engrossed provisions, a delegate moved to include only the first sentence of Proposition 50 as Article 2, Section 31, and the provision relating to contractual releases was entirely deleted from the constitution. *Id.* at 897.

¶58        The records of the convention do not explain why the second sentence of Proposition 50 was not included in the final version of the constitution. One reason for the ultimate decision to eliminate the language nullifying contractual releases in all cases may well have been the concern by many delegates that such a provision, by proscribing the right to

contract, would violate the federal constitution. *See id.* at 548. The delegates had good cause for concern.

¶59    Just five years prior to Arizona's constitutional convention, the United States Supreme Court issued its infamous opinion in *Lochner v. New York*, 198 U.S. 45 (1905). In *Lochner*, the Court defined the right to contract as a liberty interest protected by the Fourteenth Amendment. *Id.* at 53. State statutes that prohibited individuals from entering into certain kinds of contracts could be upheld only if a direct connection existed between the statute and the health, morals, and general welfare of the public. *Id.* Thus, the *Lochner* Court struck down a New York statute that limited the number of hours an employee in a bakery could work. *Id.* at 64.

¶60    Delegates to the Arizona constitutional convention were clearly concerned that any attempt to extend too broadly the prohibition against express contractual liability waivers would violate *Lochner*. Delegate Baker first sounded this alarm, confessing that "[he was] in doubt as to whether you can limit all contracts or not." Goff, *supra*, at 152. Delegate Jones revisited this concern later in the convention, questioning whether Proposition 50 as amended "would be nullified anyway." *Id.* at 548. Delegate Cunningham responded adamantly that this would indeed be the case and that inclusion of such a broad

limitation on the right to contract would be "absolutely absurd and wrong."  *Id.*

¶**61**     Whatever the reason behind the ultimate failure of the convention to include the second sentence of Proposition 50 in the constitution, the debate surrounding this clause provides strong evidence that the delegates were keenly aware of the distinction between express contractual waivers and the common law defenses of assumption of risk and contributory negligence. Moreover, the concerns raised by the delegation over the likelihood that a provision broadly inhibiting the right to contract would violate the federal constitution explains why the Framers chose to deal with express contractual defenses more cautiously than they dealt with implied assumption of risk.[13]

¶**62**     The treatment given employment contracts in the Arizona Constitution emphasizes the distinction made between

---

[13]   If the Framers looked to Arizona case law to guide their conclusion as to the meaning of "assumption of risk," they would have found little assistance.  To the extent case law provided any guidance, it would have confirmed the conclusion that constitutional history suggests:  Express contractual waivers did not fall within the meaning the Framers attached to "assumption of risk."  No published Arizona decision pre-dating our constitution applied the assumption of the risk doctrine to an express contractual waiver of liability.  Indeed, those few reported cases on point dealt only with assumption of the risk as an implied element of the employment contract. *See S. Pac. Co. v. McGill*, 5 Ariz. 36, 44 P. 302 (1896) (recognizing that an employee upon entering into his contract of service is *presumed* to assume all the risk naturally incident to his employment); *Ariz. Lumber & Timber Co. v. Mooney*, 4 Ariz. 96, 33 P. 590 (1893) (same).

implied and express assumption of risk. The Framers specifically addressed express liability waivers in certain employment contracts in Article 18, Section 3. That provision makes it

> unlawful for any person, company, association, or corporation to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company, association, or corporation shall be released or discharged from liability of responsibility on account of personal injuries which may be received by such servants or employees which in the service or employment of such person, company, association, or corporation, by reason of the negligence of such person, company, association, corporation, or the agents or employees thereof; and any such contract or agreement if made, shall be null and void.

Ariz. Const. art. 18, § 3.

¶63 The Framers were clearly aware of the existence of express contractual liability waivers in the employment context and viewed these waivers as distinct contractual problems requiring a separate constitutional remedy. This provision, too, supports the conclusion that the Framers distinguished between implied assumption of risk and express contractual waivers of liability.

¶64 Although an argument can be made to the contrary, I would hold that the more reasonable conclusion to draw from the history of Article 18, Section 5 is that the Framers viewed assumption of risk and express contractual liability waivers as distinct concepts. Article 18, Section 5, therefore, confers

broad powers upon the jury in those cases in which the common law defense of implied assumption of risk arises but does not extend to express waivers of liability.

### III.

¶65     Our judicial treatment of express contractual waivers of liability also argues in favor of excluding such waivers from Article 18, Section 5. In the nearly 100 years since adopting our constitution, we have never applied Article 18, Section 5 in the context of an express contractual liability waiver. In fact, for the past several decades, Arizona courts consistently have decided the enforceability of express release agreements as a matter of law, using well-established contract principles.

¶66     In 1984, this court held that parties may contractually allocate the risks of tort liability and that courts will enforce such agreements if strict conditions are met. *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 383, 694 P.2d 198, 213 (1984) (*SRP*). In *SRP*, we noted initially that the "law disfavors contractual provisions by which one party seeks to immunize himself against the consequences of his own torts." *Id.* Hence, courts will enforce express contractual waivers of tort liability only if:  (1) the waiver does not violate public policy; (2) the parties did *in fact* bargain for the waiver; and (3) the parties were on relatively "equal footing." Because of

those restrictions, courts are more likely to uphold such waivers in the context of a contract between two business entities of relatively equal bargaining power.[14] *Id.*

¶67    Since our decision in *SRP*, the court of appeals has extended our analysis to uphold summary judgment against plaintiffs in personal injury claims based upon express waivers.[15] *See, e.g.*, *Lindsey v. Cave Creek Outfitters, L.L.C.*, 207 Ariz. 487, 88 P.3d 557 (App. 2003); *Benjamin v. Gear Roller Hockey Equip., Inc.*, 198 Ariz. 462, 11 P.3d 421 (App. 2000); *Valley Nat'l Bank v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 153 Ariz. 374, 736 P.2d 1186 (App. 1987).  Other cases have denied summary judgment for defendants only because fact

---

[14]    The holding in *SRP* recognizes the unique need in commercial settings for broad and flexible contract rules that permit parties to bargain for a more rational distribution of risks and benefits.    143 Ariz. at 383, 694 P.2d at 213. The majority opinion ignores that consideration.  Although equally positioned parties may still enter into express liability waivers, such waivers must now be submitted to a jury for a determination of enforceability.    This change in law can substantially affect contracting parties.    Parties to a contract negotiate contract conditions not only in the hope that, should a lawsuit ever arise, they will prevail at trial before a jury, but also to avoid the costs of extended litigation altogether.

[15]    The legislature has codified similar extensions by enacting statutes that immunize certain businesses with substantial inherent risks from tort liability if these businesses obtain a signed, valid release from customers. *See, e.g.*, A.R.S. § 12-553 (2003) (immunizing equine owners).    In fact, the release signed by Phelps in this case most likely resulted from Firebird's attempt to comply with A.R.S. § 12-556, which provides limited liability for owners of closed-course motor sport facilities.

questions remained regarding the express waivers. *See, e.g.,* *Morganteen v. Cowboy Adventures, Inc.*, 190 Ariz. 463, 466-67, 949 P.2d 552, 555-56 (App. 1997) (reversing summary judgment for defendant where question of fact existed as to whether parties actually bargained for the liability waiver); *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 294, 298, 890 P.2d 69, 73 (App. 1994) (affirming trial court's denial of summary judgment for defendant where the express waiver did not "alert Plaintiff's decedent to the specific risks that she was supposedly waiving"); *Sirek v. Fairfield Snowbowl, Inc.*, 166 Ariz. 183, 188, 800 P.2d 1291, 1296 (App. 1990) (reversing summary judgment for defendant because the liability waiver did not expressly include negligence within its scope). The majority opinion presents no compelling reason to depart from this established jurisprudence.

¶68     For the foregoing reasons, I would affirm the opinion of the court of appeals and the trial court judgment granting summary judgment to Firebird.

_____
Ruth V. McGregor
Vice Chief Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice